CINCINNATI INSURANCE COMPANY, Appellee and Cross–Appellant,

v.

THOMPSON & WARD LEASING COMPANY, Inc., Appellant and Cross–Appellee.

[Cite as *Cincinnati Ins. Co. v. Thompson & Ward Leasing Co.*, 158 Ohio App.3d 369, 2004-Ohio-3972.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 03AP–1172.

Decided July 29, 2004.

Kohnen & Patton, L.L.P., K. Roger Schoeni, and Colleen M. Blandford, for appellee.

Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., Daniel G. Wiles, and Samuel M. Pipino, for appellant.

———————

SADLER, JUDGE.

{¶ 1} Defendant-appellant, Thompson & Ward Leasing Company, Inc., appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, Cincinnati Insurance Company, in a declaratory judgment action brought by appellee to determine the existence or absence of coverage under an insurance policy issued by appellee to appellant.

{¶ 2} In connection with its auto leasing business, appellant purchased from appellee successive annual business insurance policies including the following coverage for losses arising out of title problems with acquired vehicles:

FRAUDULENT, FORGED, OR COUNTERFEIT TITLE COVERAGE

A.   WE WILL PAY

We will pay for your loss due to the acceptance, in good faith, in exchange for merchandise, money, or services, any title to automobiles, if the titles are proven to be fraudulent, counterfeit, or forged and a criminal warrant is obtained for the arrest of the person or persons executing the titles.

B.   ADDITIONAL DEFINITIONS

1.   Title means a written document of ownership issued by governmental authority.

2.   Loss occurs when you must return an automobile to its rightful owner after you acquired it by accepting a fraudulent, counterfeit, or forged title.

{¶ 3} Appellant attempted to make a claim under this coverage for two automobile transactions in which appellant failed to receive good title to the vehicles.  Appellee denied the claims under the terms of the policy and instituted the present declaratory action to determine coverage under the policy.  Appellee then moved for summary judgment, asserting that, under the plain language of the policy, appellant had not suffered a covered loss because it had never received "title" to the vehicles as defined in the policy and that no criminal warrant had been issued for the arrest of the defrauding party.  Appellant responded with its own cross-motion for summary judgment.

{¶ 4} In opposition to appellee's motion and in support of its own, appellant presented the affidavit of one of its employees, Wendy Ross, and documentary evidence establishing the details of the transactions at issue.  The affidavit stated that appellant entered into two vehicle lease transactions involving an independent motor vehicle dealer in California, Beverly Hills Auto Collection ("BHAC") and that the circumstances of the transactions were typical of much of appellant's

leasing business. The dealer, in this case BHAC, would contact appellant with a proposed lease involving a lessee customer and a selected automobile, usually one in the dealer's inventory. Appellant's representative, in this case affiant Ross, would obtain necessary credit information about the lessee and secure lease financing from one of the financial institutions with which appellant habitually dealt. Once financing was secured, Ross would send the necessary documents to be executed by the lessee, who would return the signed documents and first month's payment under the lease contract. With the lease contract and financing in place, the auto dealer would receive payment for the vehicle from appellant, provide appellant with necessary documents to obtain title, in this case an "Application for Registration" under pertinent California Department of Motor Vehicles regulations, and title would be transferred into the name of the financial institution. The financial institution would then reimburse appellant for the purchase price. The leasing customer would thereafter make payments to the financial institution. Two vehicles, one a 2000 Porsche financed for $90,897.01, the other a 2001 Porsche financed for $102,921, were the subject of lease transactions of this type involving BHAC and appellant. In those transactions, appellant paid to BHAC the purchase price of the vehicles, but the vehicles proved to be the subject of a fraudulent transfer instigated by BHAC's principal, Randy Cohn. Appellant either did not receive reimbursement or was forced to refund reimbursement of the purchase price received from the financial institution funding the lease.

{¶ 5} Ross's affidavit further states that Detective James Green of the Beverly Hills Police Department personally indicated to Ross that criminal warrants for the arrest of Cohn in connection with the transactions at issue will be issued when Cohn completes a current federal prison sentence imposed as a result of a separate criminal conviction.

{¶ 6} The trial court granted a motion to strike that portion of Ross's affidavit concerning the future issuance of a warrant for Cohn's arrest. The trial court found that the affiant had no personal knowledge of these facts and was not competent to testify to them and that the attempt to relate Detective Green's assurances in this respect was inadmissible hearsay. In the absence of any other evidence that a warrant had been issued for Cohn's arrest, the trial court found that this condition precedent to recovery under the policy was not met and coverage could be properly denied. The trial court accordingly denied appellant's motion for summary judgment and granted appellee's motion for summary judgment.

{¶ 7} Appellant has timely appealed and brings the following three assignments of error:

Assignment of Error No. 1.

The trial court erred in denying summary judgment to Thompson & Ward Leasing Company, Inc.

Assignment of Error No. 2.

The trial court erred in granting summary judgment to Cincinnati Insurance Company.

Assignment of Error No. 3.

The trial court erred In striking portions of the affidavit of Wendy Ross.

{¶ 8} The Cincinnati Insurance Company has cross-appealed and brings the following single assignment of error:

The trial court erred in failing to strike paragraphs 15, 16 and 18 of the affidavit of Wendy Ross.

{¶ 9} Preliminarily, we note that Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id.

{¶ 10} An appellate court's review of summary judgment is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265; *Bard v. Soc. Natl. Bank* (Sept. 10, 1998), Franklin App. No. 97APE11–1497, 1998 WL 598092. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. *Jones v. Shelly Co.* (1995), 106 Ohio App.3d 440, 445, 666 N.E.2d 316. Therefore, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds. *Bard,* supra.

{¶ 11} We will for convenience of discussion first address appellant's third assignment of error, which asserts that the trial court erred in striking a portion of the affidavit of Wendy Ross.

{¶ 12} In an attempt to meet the policy requirement that a criminal warrant has been issued for apprehension of persons involved in furnishing the alleged fraudulent titles, appellant presented the following statement by the affiant at paragraph 17 of the affidavit:

Based upon information I have received from Detective James Green of the Beverly Hills Police Department, 464 North Rexford Drive, Beverly Hills, California, criminal warrants for the arrest of Randy Cohn for illegal acts of theft and fraud involving various automobiles (including Vehicle Nos. 1 & 2 as described above), will be issued depending on Cohn's completion of his current sentence in federal prison on other criminal charges.

{¶ 13} Pursuant to Civ.R. 56(E), affidavits submitted in support of and in opposition to summary judgment shall be "made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Information in affidavits that is not based on personal knowledge and does not fall under any of the permissible exceptions to the hearsay rule may be properly disregarded by the trial court when granting or denying summary judgment. *Pond v. Carey Corp.* (1986), 34 Ohio App.3d 109, 111, 517 N.E.2d 928. Appellant relies on either Evid. R. 803(6) or 803(8), which create hearsay exceptions respectively for business records and public records, to render paragraph 17 of the affidavit admissible. Neither section is applicable; Ross was relaying a statement by another person for the purpose of proving the matter asserted, rather than attempting to admit either government or business records themselves in any form. The statements of Detective Green do not constitute a public or business record and are not admissible in this manner under any exception to the hearsay rule. Since the information in paragraph 17 asserts facts beyond the personal knowledge of the affiant and would not be admissible under any exception to the hearsay rule, the trial court did not err in striking paragraph 17 of Ross's affidavit. Appellant's third assignment of error is overruled.

{¶ 14} We now turn to appellant's first and second assignments of error. Appellant's first assignment of error asserts that the trial court erred in denying appellant's motion for summary judgment. Ordinarily, denial of a motion for summary judgment is not a final appealable order and will not be addressed upon appeal. *Buckeye Union Ins. Co. v. IBM* (Feb. 26, 1981), Franklin App. No. 80AP–734, 1981 WL 3017. Even after judgment is entered in favor of the nonmoving party, any error by a trial court in denying a motion for summary judgment is rendered either moot or harmless where a subsequent trial on the merits demonstrates that there were indeed material issues of fact supporting judgment in favor of the nonmoving party. *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 642 N.E.2d 615. This court and other Ohio appellate courts, however, have accepted review of a denial of summary judgment in cases, such as the present one, in which the matter was submitted upon cross-motions for summary judgment and a final judgment was entered against the appellant. *FCE Transp., Inc. v. Ajayem Lumber Midwest Corp.*

(May 12, 1988), Franklin App. No. 87AP–1146, 1988 WL 48018; *Bean v. Metro. Property & Liab. Ins. Co.* (1990), 68 Ohio App.3d 732, 589 N.E.2d 480. We will accordingly address appellant's first assignment of error. However, since appellant's first and second assignments of error address essentially the same documentary evidence and affidavits, they may best be addressed and determined in a single discussion.

■ {¶ 15} Both with respect to the denial of summary judgment for appellant and the grant of summary judgment for appellee, the question before us is whether the evidence before the trial court established that there remained a material issue of fact on the questions of whether the "fraudulent, forged or counterfeit title" coverage covered the losses incurred by appellant in the two fraudulent transactions with BHAC and Cohn. Paraphrasing the coverage conditions in the insurance policy, appellant in making a claim was held to show that it had (1) suffered a loss (2) resulting from the acceptance in good faith, in exchange for money, merchandise, or services, of (3) title to automobiles that (4) were proven to be fraudulent, counterfeit, or forged, and that (5) a criminal warrant issued for the arrest of the person or persons executing the titles. The two specific questions before the trial court were, first, whether the "applications for registration" furnished by Cohn as the vehicle seller under California law, and under which appellant would apply for title on behalf of the financing entity, constituted "written documents of ownership issued by a governmental authority" as required by the policy and, second, whether appellant had established that a criminal warrant was obtained for the arrest of the person or persons executing the titles. Answering the second question in the negative, we decline, as did the trial court, to address the first, which would require us to make, on facts not completely developed, a rather significant and potentially precedential determination of the actual state of California motor vehicle title law.

{¶ 16} Because the trial court properly struck paragraph 17 of the Ross affidavit and did not consider the assertions therein as evidence for purposes of opposing summary judgment, it is apparent that appellant has offered no proof that it satisfied the policy requirement that a criminal warrant be obtained for the arrest of the person or persons executing the fraudulent titles. The trial court properly concluded that this precluded coverage.

■ {¶ 17} In the alternative, appellant argues that if the condition precedent was not met, the precondition to coverage under the policy should be read out of the policy as being against public policy, unconscionable, and rendering the insurance coverage illusory. Courts addressing such public-policy arguments must be mindful that freedom to contract is fundamental, *Blount v. Smith* (1967), 12 Ohio St.2d 41, 47, 41 O.O.2d 250, 231 N.E.2d 301, and that a binding agreement freely entered into between the parties should not be lightly disre-

garded unless it clearly contravenes an established public interest. *Zivich v. Mentor Soccer Club* (1997), Lake App. No. 95–L–184, 1997 WL 203646, citing *Baltimore & Ohio Southwestern Ry. Co. v. Voigt* (1900), 176 U.S. 498, 20 S.Ct. 385, 44 L.Ed. 560. Likewise, courts generally are reluctant to apply the doctrine of unconscionability to transactions entered into between business entities dealing at arm's length. A contract will be found unconscionable where it was not the result of a freely reached bargain between parties with both the freedom of choice and the opportunity to understand and negotiate in a meaningful fashion. *Ohio Univ. Bd. of Trustees v. Smith* (1999), 132 Ohio App.3d 211, 220, 724 N.E.2d 1155. " 'Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " Id., quoting *Williams v. Walker–Thomas Furniture Co.* (C.A.D.C.1965), 350 F.2d 445, 449.

{¶ 18} Neither the public policy nor the unconscionability arguments are persuasive on these facts. There is no evidence that the insurance contract was anything but an arm's-length agreement between businesses with equal freedom to contract elsewhere as they saw fit. The fraudulent title coverage is doubtless restricted by the conditions precedent, but it is not for that illusory. Its terms are clearly spelled out, not "hidden in a maze of fine print," *Williams,* supra, 350 F.2d at 449, and the rationale for the requirement of criminal prosecution is a common one in policies seeking to reduce the risk of collusive claims. While appellant was no doubt contributory to the action or inaction of California police authorities in issuing a warrant for Cohn's arrest, we find that this of itself is not a sufficient basis to find that the fraudulent title coverage was not provided on freely bargained terms, however limiting those terms might be, to restrict recovery in the present case. With respect to the public policy assertions, appellant has made no compelling public-policy argument under which to strike the coverage conditions as written. Under these circumstances, the trial court correctly granted summary judgment to appellee and denied it to appellant, and appellant's first and second assignments of error are overruled.

{¶ 19} We now turn to the assignment of error filed by appellee on cross-appeal. Appellee asserts that the trial court erred in failing to strike additional paragraphs of the affidavit. As the appeal is postured, this assignment of error could well have been stated as conditional, but appellee has chosen not to do so, and we will accordingly briefly address the question. Because summary judgment was properly granted to appellee, and appellee has not specified any ancillary prejudice that might devolve in future proceedings from the trial court's failure to strike these paragraphs of the affidavit, appellee has failed to set forth any prejudicial error on the part of the trial court. Claimed error alone cannot support reversal; the party assigning error must demonstrate prejudice resulting

therefrom. *Smith v. Flesher* (1967), 12 Ohio St.2d 107, 41 O.O.2d 412, 233 N.E.2d 137. Appellee's lone cross-assignment of error is accordingly overruled.

{¶ 20} In accordance with the foregoing, appellant Thompson & Ward's first, second, and third assignments of error are overruled, and appellee Cincinnati Insurance Company's assignment of error on cross-appeal is also overruled. The judgment of the Franklin County Court of Common Pleas granting summary judgment for Cincinnati Insurance Company is affirmed.

Judgment affirmed.

BOWMAN and WATSON, JJ., concur.