OPINION
{¶ 1} Defendant-appellant Thompson Ward Leasing Co., Inc. ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas denying appellant's motion pursuant to Civ.R. 60 (B) for relief from a prior judgment of the court in favor of plaintiff-appellee, Cincinnati Insurance Company.
 {¶ 2} This matter is before us for the second time. Cincinnati Insurance Company began litigation with a complaint in declaratory judgment seeking to determine the existence or absence of coverage under an insurance policy it issued to appellant. In the interest of consistency, the facts below are taken nearly verbatim from our prior decision, CincinnatiInsurance Co. v. Thompson Ward Leasing Company,158 Ohio App.3d 369, 2004-Ohio-3972, 815 N.E.2d 1126.
 {¶ 3} Appellant is in the auto leasing business. Appellant purchased from appellee successive annual business insurance policies including the following coverage for losses arising out of title problems with acquired vehicles:
FRAUDULENT, FORGED, OR COUNTERFEIT TITLE COVERAGE
A. WE WILL PAY
We will pay for your loss due to the acceptance, in good faith, in exchange for merchandise, money, or services, any title to automobiles, if the titles are proven to be fraudulent, counterfeit, or forged and a criminal warrant is obtained for the arrest of the person or persons executing the titles.
B. ADDITIONAL DEFINITIONS
1. Title means a written document of ownership issued by governmental authority.
2. Loss occurs when you must return an automobile to its rightful owner after you acquired it by accepting a fraudulent, counterfeit, or forged title.
 {¶ 4} Appellant attempted to make a claim under this coverage for two automobile transactions in which appellant suffered financial loss arising from fraudulent vehicle conveyances. Appellee denied the claims under the terms of the policy language and instituted the present declaratory action to determine coverage under the policy. Appellee then moved for summary judgment, asserting that, under the plain language of the policy, appellant had not suffered a covered loss because it had never received "title" to the vehicles as defined in the policy, and that no criminal warrant had been issued for the arrest of the defrauding party. Appellant responded with its own cross-motion for summary judgment.
 {¶ 5} In opposition to appellee's motion and in support of its own, appellant presented the affidavit of one of its employees describing the transactions at issue and related documentary evidence. The affidavit stated that appellant entered into two vehicle lease transactions involving an independent motor vehicle dealer in California, Beverly Hills Auto Collection ("BHAC"), and that the circumstances of the transactions were typical of much of appellant's leasing business. The dealer, in this case BHAC, would contact appellant with a proposed lease involving a lessee customer and a selected automobile, usually one in the dealer's inventory. Appellant would obtain necessary credit information about the proposed lessee and secure lease financing from one of the financial institutions with which appellant habitually dealt. Once financing was secured, appellant would send the necessary documents to be executed by the lessee, who would return the signed documents and first month's payment under the lease contract. With the lease contract and financing in place, the auto dealer would receive payment for the vehicle from appellant, provide appellant with necessary documents to obtain title, in this case an "Application for Registration" under pertinent California Department of Motor Vehicles regulations, and title would be transferred into the name of the financial institution. The financial institution would then reimburse appellant for the purchase price. The leasing customer would thereafter make payments to the financial institution. Two vehicles, one a 2000 Porsche financed for $90,897.01, the other a 2001 Porsche financed for $102,921, were the object of lease transactions of this type involving BHAC and appellant. During the course of those transactions, appellant paid to BHAC the purchase price of the vehicles, but the vehicles proved to be the object of a fraudulent transfer instigated by BHAC's principal, Randy Cohn, who never followed through by furnishing clear title to the financing entity. Appellant either did not receive reimbursement or was forced to refund reimbursement of the purchase price received from the financial institution funding the lease.
 {¶ 6} The trial court granted summary judgment to appellee, and our prior decision affirmed that summary judgment on the limited basis that appellant had failed to satisfy the requirements of the fraudulent, forged, or counterfeit title coverage in the Cincinnati policy because no warrant had issued for Randy Cohn in connection with the fraudulent transactions. We declined, however, to unnecessarily extend our review to whether other aspects of the transaction met the requirements of the fraudulent title coverage endorsement. Id. at ¶ 15.
 {¶ 7} At about the same time that our decision issued, the Beverly Hills Police Department issued arrest warrants for Randy Cohn, purportedly for the transactions at issue. Appellant presented these warrants to the trial court in conjunction for a motion for relief from judgment pursuant to Civ.R. 60(B), asserting that, under the reasoning of our decision on appeal, the criminal arrest warrants constituted newly discovered evidence that would support vacating the summary judgment in favor of Cincinnati Insurance Company, as the prerequisite condition for coverage under the fraudulent title endorsement was now met.
 {¶ 8} The trial court accepted appellant's contention that the criminal arrest warrants constituted newly discovered evidence, but found that the automobile transactions as outlined above did not otherwise meet the conditions for coverage under the fraudulent title endorsement, and that relief from judgment would not be granted. Appellant has timely appealed and brings the following two assignments of error:
Assignment of Error No. 1
The Trial Court Abused its Discretion When it Improperly Applied the "Meritorious Defense" Element for Relief from Judgment Under Civ.R. 60(B).
Assignment of Error No. 2
The Trial Court Erred When it Determined Thompson Ward had Insufficient Insurable Interests, Indicia of Ownership and Title Applications to Establish Coverage under Cincinnati's Policy.
 {¶ 9} Appellee has filed a conditional cross appeal with a sole assignment of error:
Conditional Cross Assignment of Error No. 1:
The Trial Court erred in finding Thompson Ward presented newly discovered evidence.
 {¶ 10} Appellant sought relief from the trial court's prior judgment under Civ.R. 60(B)(2), providing in pertinent part as follows:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial * * *.
 {¶ 11} In order to prevail in a motion brought pursuant to Civ.R. 60(B), the movant must demonstrate (1) a meritorious defense or claim in the action, (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B), and (3) that the motion is made within a reasonable time, or if relief is sought under Civ.R. 60(B)(1)(2) or (3), not more than one year after entry of the judgment from which relief is sought. GET AutomaticElec., Inc. v. ARC Indus., Inc. (1976), 47 Ohio St.2d 146, 1 O.O.2d 146, 351 N.E.2d 113, paragraph two of the syllabus. The decision to grant or deny a motion for relief from judgment pursuant to Civ.R. 60(B) is within the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of that discretion. Id. at 150.
 {¶ 12} Appellant's first assignment of error asserts that the trial court erred in finding that appellant, in order to obtain relief from judgment pursuant to Civ.R. 60(B)(2), was required to present more than mere operative facts setting forth a meritorious claim or defense, but needed, in essence, to meet a standard of proof with respect to those facts. Appellant's second assignment of error asserts that the trial court erred in its interpretation of the contract of insurance when it found that the facts of the case, even if an arrest warrant were presented in connection with the fraudulent transactions, did not support coverage because appellant never received title ownership or actual possession from its seller. In the present context the two assignments of error present inextricably related questions and will be addressed together.
 {¶ 13} Pursuant to the policy issued by Cincinnati Insurance, the fraudulent title coverage applied where the claimant had suffered loss from the acceptance in good faith, and for value, of title to automobiles later proven to be fraudulent, counterfeit, or forged, and that a criminal warrant had issued for the arrested person responsible for the fraud. Our discussion in our prior decision focused whether the requisite criminal prosecution was undertaken, and whether the documents issued in the transactions constituted some form of insurable title. Having determined that no warrant had yet been issued for Cohn, we declined to address the exact function of the purchased documents executed in these automobile transactions, and whether they were "titles" in the sense of documents evidencing ownership of an automobile as the term "title" is understood in Ohio. Nor did we go further and address issues not substantially discussed by the parties, such as whether, as the transactions were structured, appellant had suffered loss from "acceptance" of possession and ownership of the vehicles as required by the policy, and had realized that loss thorough a return of the vehicles or repayment of purchase funds to the rightful owner.
 {¶ 14} Interpretation of a contract of insurance is a matter of law addressed to the court. Leber v. Smith (1994),70 Ohio St.3d 548, 553, 639 N.E.2d 1159. Absent ambiguity in the contract language or use of terms with a specialized meaning within the industry, the contract language should be given its full effect according to the ordinary meaning of the words employed, presuming that this reflects the intent of the parties and the whole agreement between them. ALD Concrete Grading Co. v.Chem-Masters Corp. (1996), 111 Ohio App.3d 759, 766,677 N.E.2d 362.
 {¶ 15} The pertinent facts in the present case are not particularly in dispute, as the parties largely base their rendition of the structure of the transactions at issue on appellant's own description of them. The dispute turns on the application of the policy language. Thus, there was little significant difference of opinion before the trial court in considering the Civ.R. 60(B)(2) motion for relief from judgment regarding the weight to be given to the facts; the trial court accepted that a criminal warrant had issued in the case, the trial court then proceeded to examine the other prerequisites for coverage and find that the claim was still wanting. Examining the policy language, we likewise find that appellant still has not presented operative facts entitling it to relief from judgment, and that the trial court did not err in denying such relief.
 {¶ 16} Applying the plain language of the policy and examining the evidence before the trial court in support of the motion for relief from judgment, it is apparent that appellant has not set forth operative facts demonstrating a meritorious claim justifying relief from judgment. The prerequisite circumstances for coverage are not fulfilled under the description of the transactions set forth above: first, that appellant acquired vehicle by accepting a fraudulent title, and second, that the vehicle was returned to its rightful owner: "loss occurs when you must return an automobile to its rightful owner after you acquired it by accepting a fraudulent, counterfeit or forged title." "Title" is defined under the policy as "a written document of ownership issued by governmental authority."
 {¶ 17} As the transactions were structured, appellant never attempted to take title itself, but served as a compensated intermediary facilitating a transaction between two third parties, the financial institution that would hold title to the vehicle, and the lessee who would have the use of the vehicle and make payments to the financial institution pursuant to the lease agreement. Appellant therefore cannot be said to have "accepted" any title. Regardless of whether the sale documents initiated by Cohn in California would of themselves constituted a title, they were preliminary steps toward acquisition of title by the financing entity, not appellant. Moreover, there is no evidence that appellant's loss took place through return of the vehicles to their rightful owner; in fact, the ultimate disposition of the vehicles in question is not elaborated upon in the motion, and elsewhere in the record appellant asserts that Cohn subsequently sold the vehicles to innocent third parties. While it is undisputed, for purposes of the present proceedings, that appellant has suffered a financial loss due to Cohn's fraud, that loss is not in a form covered under the policy at issue.
 {¶ 18} We accordingly find that appellant's motion for relief from judgment in the trial court, despite advancing newly discovered evidence in the form of the criminal warrant issued in California, does not present operative facts setting forth a meritorious claim in the matter, because the facts on their face fall short of those necessary to sustain a claim under the language of the insurance policy. Appellant's two assignments of error are accordingly overruled, and the judgment of the Franklin County Court of Common Pleas denying relief from judgment is affirmed. Appellee's conditional cross appeal is rendered moot.
Judgment affirmed.
Petree and Travis, JJ., concur.