[Cite as *U.S. Bank v. Williams*, 2022-Ohio-4590.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

U.S. Bank Trust National Association as : 
Trustee of the Lodge Series III Trust,

                               :

         Plaintiff-Appellee,          :                     No. 21AP-576

                               :           (C.P.C. No. 19CV-7085)

v.

                               :          (REGULAR CALENDAR)

Charles Williams, Jr.,

                               :

         Defendant-Appellant.

                               :

---

D E C I S I O N

Rendered on December 20, 2022

---

**On brief:** *Sottile & Barile LLC*, *Ethan Hill*, and *Susan B. Klineman*, for appellee. **Argued:** *Ethan Hill*.

**On brief:** *Bruce M. Broyles*, for appellant. **Argued:** *Bruce M. Broyles*.

---

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Charles Williams, Jr., appeals a judgment of the Franklin County Court of Common Pleas that granted summary judgment to plaintiff-appellee, U.S. Bank Trust National Association as trustee of the Lodge Series III Trust. For the following reasons, we reverse that judgment and remand this case to the trial court.

{¶ 2} On August 30, 2019, U.S. Bank filed a foreclosure complaint against Williams. In the complaint, U.S. Bank alleged that it was the holder of a promissory note executed by Williams and Regina Blount-Williams. U.S. Bank also alleged that it was the holder of the mortgage that secured the note. Additionally, U.S. Bank stated that Williams

and Blount-Williams had defaulted on the note and owed $377,862.90, plus interest, costs, and expenses. U.S. sought a monetary judgment, foreclosure of the mortgage, sale of the mortgaged property, and payment of the monetary judgment from the sale proceeds.

{¶ 3} U.S. Bank moved for summary judgment against Williams on June 2, 2021.[1] To support its motion, U.S. Bank relied on the affidavit of Jordan Kahoalii, an asset manager for SN Servicing Corporation, which acted as the servicing agent for the Williams' mortgage loan. Kahoalii testified in her affidavit that, in her capacity as asset manager, she had access to U.S. Bank's loan accounts, which were maintained in the ordinary course of business. The Williams' loan account included the promissory note, loan modification documents, the mortgage, the payment history, and servicing records. Kahoalii averred that:

> [d]ata entries in the Loan Account [were] made at or near the time of occurrence by a person, with knowledge of the occurrence, and [were] compiled and recorded as part of [U.S. Bank's] regularly conducted business activity. Such records [were] kept, maintained, and relied upon in the course of [U.S. Bank's] ordinary and regularly conducted business activity. The statements [she made] in [her] Affidavit [were] based upon [her] personal review of those entries relating to the Loan Account of Charles Williams, Jr. and Regina Blount-Williams, and from [her] own personal knowledge of how the records [were] kept and maintained.

(Kahoalii Aff. at ¶ 2.)

{¶ 4} Kahoalii then stated that the Williams' note was in U.S. Bank's possession, and that U.S. Bank had acquired the note prior to the filing of the complaint. Kahoalii also stated that the mortgage was assigned to U.S. Bank as reflected in the assignments of mortgage attached to her affidavit. Finally, according to Kahoalii, the Williams had defaulted under the terms of the note, and there was "due and owing [ ] the principal sum of $377,862.90, together with interest on the unpaid principal [sum] from August 10, 2017, at the rate of 2%, and including the additional sum of $12,941.90 of non-interest bearing principal, as set forth in the Note and Loan Modification * * *." *Id*. at ¶ 11. To substantiate

---

[1] Blount-Williams did not answer the complaint. Consequently, U.S. Bank moved for and received default judgment against Blount-Williams.

the amount due, Kahoalii attached a copy of the payment history, which Kahoalii indicated "reflect[ed] payments and charges associated with the Loan Account." *Id.*

{¶ 5} In response to U.S. Bank's motion for summary judgment, Williams argued that U.S. Bank lacked standing to enforce the mortgage. Williams pointed out gaps in the chain of recorded assignments of the mortgage, and Williams claimed that those gaps deprived U.S. Bank of the standing it needed to proceed with foreclosure. Additionally, Williams argued that Kahoalii could not testify regarding the amount owed because she based her testimony on a payment history created by a prior loan servicer, which Williams alleged was inadmissible hearsay.

{¶ 6} In a judgment dated October 11, 2021, the trial court granted U.S. Bank summary judgment and issued a decree of foreclosure. Williams now appeals that judgment and assigns the following errors:

> [1.] THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN A GENUINE ISSUE OF MATERIAL FACT REMAINED AS TO APPELLEE'S RIGHT TO ENFORCE THE MORTGAGE AS DEMONSTRATED BY THE CHAIN OF ASSIGNMENTS OF THE MORTGAGE.
>
> [2.] THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN A GENUINE ISSUE OF MATERIAL FACT REMAINED AS TO THE AMOUNT OF PRINCIPAL AND INTEREST DUE.
>
> [3.] THE TRIAL COURT ERRED IN FAILING TO CONSIDER THE ARGUMENTS OF APPELLANT REGARDING THE INADMISSIBLE HEARSAY AND THE CONFUSING NATURE OF THE PAYMENT HISTORY WHEN RENDERING SUMMARY JUDGMENT.

{¶ 7} All Williams' assignments of error challenge the trial court's decision to grant U.S. Bank summary judgment. A trial court must grant summary judgment under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a

motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 8} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making conclusory allegations. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* If the moving party meets its burden, then the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

{¶ 9} By his first assignment of error, Williams argues that the trial court erred in granting U.S. Bank summary judgment because U.S. Bank failed to establish its right to enforce the mortgage. We disagree.

{¶ 10} Initially, we must determine whether Williams challenges U.S. Bank's standing to foreclose or, instead, Williams contends U.S. Bank cannot satisfy an element of its foreclosure action. In the trial court, Williams argued that U.S. Bank lacked standing because it could not establish its right to enforce the mortgage. Now, before this court, Williams argues that U.S. Bank cannot prove an element of its foreclosure action because it is unable to enforce the mortgage. Having lost in the trial court, a party cannot change its theory of the case in an attempt to succeed on appeal. *State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections*, 65 Ohio St.3d 175, 177 (1992). We will consequently review the argument Williams raised in the trial court: U.S. Bank lacked standing due to its alleged inability to enforce the mortgage.

{¶ 11} "[T]he fundamental requirement of standing is that the party bringing the action must have a personal stake in the outcome of the controversy, i.e., that it must be the injured party." *Deutsche Bank Natl. Trust Co. v. Holden*, 147 Ohio St.3d 85, 2016-Ohio-

4603, ¶ 32. To establish standing generally, a claimant must show that it suffered an injury that is fairly traceable to the defendant's allegedly unlawful conduct, and that the requested relief is likely to redress the injury. *Id.* at ¶ 20. At its core, standing turns on the nature and source of the claim asserted. *Id.*

{¶ 12} Typically, a foreclosure action consists of a legal action to collect on the defaulted note together with an equitable action to force a sale of the mortgaged property. *Id.* at ¶ 5. In such an action, "[t]he person entitled to enforce the note pursuant to R.C. 1303.31 has standing to seek a personal judgment against the promisor on that obligation, while the mortgagee or its successor and assign has standing to foreclose on the mortgage." *Id.* at ¶ 35. The plaintiff must possess the requisite stake in the action on the date that it files the action. *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 24-25.

{¶ 13} Here, in its foreclosure action, U.S. Bank sought both a monetary judgment on the note and the forced sale of the Williams' property for the satisfaction of the mortgage debt. U.S. Bank had standing, therefore, if it was the person entitled to enforce the Williams' note and the holder of the Williams' mortgage on the date it filed the complaint.

{¶ 14} On appeal, Williams does not contest that U.S. Bank is the person entitled to enforce the note. The law and evidence supports this conclusion.

{¶ 15} A plaintiff qualifies as the "[p]erson entitled to enforce" a negotiable instrument if the plaintiff is "[t]he holder of the instrument." R.C. 1303.31(A)(1). The definition of "holder" varies depending on whether the negotiable instrument at issue is made payable to a particular person. If the instrument is payable to an identified person, the holder is the identified person when in possession of the instrument. R.C. 1301.01(T)(1)(b).[2] If an instrument is payable to the bearer, the holder is the person in possession of the instrument. R.C. 1301.01(T)(1)(a). A blank indorsement makes the instrument payable to the bearer. R.C. 1303.25(B).

---

[2] Effective June 29, 2011, Am.H.B. No. 9, 2011 Ohio Laws File 9, repealed R.C. 1301.01, amended the provisions of R.C. 1301.01, and renumbered that section so that it now appears at R.C. 1301.201. R.C. 1301.201 only applies to transactions entered into after the effective date of that statute. The Williams executed their note in 1987, well before the effective date of R.C. 1301.201. Consequently, we apply R.C. 1301.01 to this appeal.

{¶ 16} Kahoalii, the asset manager for the servicing agent, authenticated the Williams' note and the accompanying allonges in her affidavit. The Williams' note was indorsed in blank. According to Kahoalii's affidavit testimony, U.S. Bank acquired the Williams' note prior to filing the complaint, and U.S. Bank maintains the note in its possession. U.S. Bank, therefore, provided evidence establishing itself as the person entitled to enforce the Williams' note.

{¶ 17} Williams, however, disputes U.S. Bank's contention that it is the holder of the Williams' mortgage. Williams argues that gaps in the chain of the recorded mortgage assignments prevented U.S. Bank from acquiring any interest in the mortgage. In response, U.S. Bank first asserts that Williams cannot question the assignments that resulted in its status as the holder of the mortgage. According to U.S. Bank, the mortgage assignments were contractual matters not involving Williams, and as a non-party to those transactions Williams lacks the privity necessary to challenge their validity.

{¶ 18} U.S. Bank's argument fails for two reasons. First, U.S. Bank did not raise it in the trial court, and thus, waived the right to raise it on appeal. *West v. Bode*, 162 Ohio St.3d 293, 2020-Ohio-5473, ¶ 43. Second, we have previously found the argument unavailing. As a defendant, a homeowner may challenge the plaintiff bank's standing to bring a foreclosure action: " '[T]he maker of the note or mortgage has standing to challenge their enforcement against the maker, even if not a party in privity to the particular transfer or assignment challenged.' " *Green Tree Servicing LLC v. Asterino-Starcher*, 10th Dist. No. 16AP-675, 2018-Ohio-977, ¶ 23, quoting *United States Bank Natl. Assn. v. George*, 10th Dist. No. 14AP-817, 2015-Ohio-4957, ¶ 27.

{¶ 19} We therefore turn to analyzing whether the chain of recorded mortgage assignments culminates in U.S. Bank's acquisition of the mortgage. In total, eight assignments of the mortgage were recorded with the Franklin County Recorder prior to the filing of the complaint. The first three assignments maintain the chain. In the first, Washington Mutual Bank FA, successor in interest of the original mortgagee, assigned the mortgage to EMC Mortgage Corporation. In the second, EMC Mortgage Corporation assigned the mortgage to LaSalle Bank National Association as trustee for the certificate holders of EMC Mortgage Loan Trust 2004-A, Mortgage Loan Pass-Through Certificates,

Series 2004-A ("LaSalle Bank"). In the third, LaSalle Bank assigned the mortgage to EMC Mortgage LLC.[3]

{¶ 20} In the fourth assignment, which was signed June 11, 2015 and recorded July 8, 2015, EMC Mortgage Corporation assigned the mortgage to Wilmington Trust, National Association, as trustee for VM Trust Series 3 ("Wilmington Trust"). Because EMC Mortgage *LLC*—not EMC Mortgage *Corporation*—owned the mortgage prior to the fourth assignment, the fourth assignment broke the chain. However, a "gap assignment" attempted to fix the problem. The next recorded assignment, entitled "GAP ASSIGNMENT OF MORTGAGE," expressly stated, "THE ASSIGNMENT OF THE BELOW REFERENCED LIEN IS FILED OUT OF SEQUENCE * * *." (Kahoalii Aff. at Ex. C.) Indeed, the gap assignment was executed on April 27, 2015—*before* the fourth assignment—but recorded on February 25, 2016—*after* the fourth assignment. Therefore, when placed in chronological sequence, the gap assignment belongs before the fourth assignment.

{¶ 21} But the gap assignment did not accomplish its goal of mending the break in the chain. In the gap assignment, LaSalle Bank assigned the mortgage to EMC Mortgage Corporation. The entity at the end of the assignment chain was EMC Mortgage LLC, not LaSalle Bank. LaSalle Bank had already assigned its interest to EMC Mortgage LLC in the third assignment, and thus had no interest in the mortgage to assign in the gap assignment. To fill the gap, EMC Mortgage LLC, the assignee in the third mortgage, would have to assign the mortgage to EMC Mortgage Corporation, the assignor in the fourth mortgage. Because no such gap assignment was recorded, the gap went unfilled.

{¶ 22} As an alternative argument, U.S. Bank asserts that, if the gap assignment is disregarded as invalid, the chain of recorded mortgage assignments is not broken. According to U.S. Bank, EMC Mortgage Corporation and EMC Mortgage LLC are the same entity, so EMC Mortgage Corporation could legally assign to another entity a mortgage first assigned to EMC Mortgage LLC. If correct, this would eliminate the gap between the third and fourth assignments.

{¶ 23} We, however, cannot review U.S. Bank's argument because it rests upon evidence that U.S. Bank did not introduce in the trial court. U.S. Bank attaches various

---

[3] In the third assignment and the gap assignment, LaSalle's successor in interest, The Bank of America, National Association, actually assigned the mortgage. However, to avoid excessive complication, we will refer to the assignor in these two assignments as "LaSalle."

business records to its appellate brief to support its assertion that EMC Mortgage Corporation and EMC Mortgage LLC are the same entity. The trial court did not have these records before it when ruling on the motion for summary judgment.

{¶ 24} An appellate court's review is limited to the same evidentiary materials that were before the trial court when it ruled on the motion for summary judgment. *Guernsey Bank v. Milano Sports Ents., LLC*, 177 Ohio App.3d 314, 2008-Ohio-2420, ¶ 30 (10th Dist.). " 'A reviewing court cannot add matter to the record before it, which was not part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.' " *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, ¶ 13, quoting *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus.

{¶ 25} U.S. Bank asserts that this court can consider the new evidentiary material under Loc.R. 9.1 of the Tenth District Court of Appeals because the material pertains to U.S. Bank's standing to defend this appeal. Pursuant to Loc.R. 9.1, this court "may admit additional evidence pertaining to the * * * [s]tanding of a party to prosecute or defend the appeal." However, U.S. Bank's standing to defend this appeal is not at issue. We are reviewing a different question: whether U.S. Bank has standing to pursue a foreclosure action. We thus find U.S. Bank's argument unpersuasive, and we strike the evidentiary material attached to U.S. Bank's brief from the record.

{¶ 26} Returning to the chain of recorded mortgage assignments, in the fifth assignment, Wilmington Trust assigned the mortgage to V Mortgage Reo 3, LLC. The sixth assignment, once again, broke the chain of mortgage assignments because in it, Wilmington Trust purported to assign the mortgage it had already assigned; this time to U.S. Bank Trust National Association, as trustee of the Bungalow Series III Trust. Finally, in the seventh assignment, U.S. Bank Trust National Association, as trustee of the Bungalow Series III Trust, assigned the mortgage to U.S. Bank Trust National Association, as trustee of the Lodge Series III Trust.

{¶ 27} As Williams points out, there are two breaks in the chain of the mortgage assignments. Nevertheless, even with these breaks, U.S. Bank can still enforce the mortgage pursuant to equitable assignment. Negotiation of a note secured by a mortgage operates as an equitable assignment of the mortgage, even if the mortgage is not assigned or delivered. *Deutsche Bank Natl. Trust Co. v. Stone*, 10th Dist. No. 20AP-94, 2021-Ohio-

3007, ¶ 21; *Asterino-Starcher*, 10th Dist. No. 16AP-675, 2018-Ohio-977, at ¶ 37; *Huntington Natl. Bank v. Miller*, 10th Dist. No. 14AP-586, 2016-Ohio-5860, ¶ 19; *UAP-Columbus JV326132 v. Young*, 10th Dist. No. 14AP-422, 2014-Ohio-4590, ¶ 30; *Wells Fargo Bank, N.A. v. Byers*, 10th Dist. No. 13AP-767, 2014-Ohio-3303, ¶ 18; *United States Bank Natl. Assn. v. Gray*, 10th Dist. No. 12AP-953, 2013-Ohio-3340, ¶ 32.  " 'In other words, "[t]he physical transfer of the note endorsed in blank, which the mortgage secures, constitutes an equitable assignment of the mortgage, regardless of whether the mortgage is actually (or validly) assigned or delivered." ' "  *Stone* at ¶ 21, quoting *Asterino-Starcher* at ¶ 37, quoting *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. No. 98502, 2013-Ohio-1657, ¶ 65; *accord Miller* at ¶ 19; *Chenault v. Deutsche Bank Natl. Trust Co.*, 10th Dist. No. 14AP-669, 2015-Ohio-1850, ¶ 16; *Byers* at ¶ 18; *Gray* at ¶ 32.

{¶ 28} Ohio's version of the Uniform Commercial Code incorporates the common-law doctrine of equitable assignment.  *Gray* at ¶ 33.  Under R.C. 1309.203(G), "[t]he attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security interest, mortgage, or other lien."  This division "codifies the common-law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien."  UCC Official Comment, Section 9-203, Comment 9 (2000).

{¶ 29} Here, Williams does not dispute that U.S. Bank is the person entitled to enforce the note, or that U.S. Bank came into possession of that note prior to the filing of the complaint.  Transfer of the note into U.S. Bank's possession effectuated the equitable assignment of the mortgage to U.S. Bank, regardless of the invalidity of certain recorded assignments.  Consequently, pursuant to the doctrine of equitable assignment, U.S. Bank was the holder of the mortgage when it filed suit.

{¶ 30} Williams argues that the two breaks in the chain of the recorded mortgage assignments evidence the separation of the mortgage from the note, which precludes us from applying the doctrine of equitable assignment.  But Williams' argument assumes the inapplicability of the doctrine in the first place.  Pursuant to equitable assignment, the mortgage transfers with the note, regardless of whether the transfer is memorialized with a valid mortgage assignment that appears in the record.  Consequently, defects in the chain

of recorded mortgage assignments do not affect the operation of the doctrine. When applying the doctrine of equitable assignment, the operative question, instead, is whether the plaintiff bank is the person entitled to enforce the note.

{¶ 31} In sum, we conclude that U.S. Bank established that, at the time it filed the complaint, it was the person entitled to enforce the Williams' note, and it was the holder of the Williams' mortgage. U.S. Bank, therefore, had standing to enforce both the note and mortgage. Accordingly, we overrule Williams' first assignment of error.

{¶ 32} We next consider Williams' third assignment of error. By that assignment of error, Williams argues that the trial court erred in not explicitly ruling on his argument that Kahoalii impermissibly relied on hearsay to testify to the amount due on the note. We find no error because it is clear from the grant of summary judgment that the trial court rejected Williams' argument. In finding that "there is due the Plaintiff on the promissory note * * * the principal balance of $377,862.90," the trial court necessarily found Kahoalii's testimony admissible. (Jgmt. Entry & Decree of Foreclosure at 2.) Accordingly, we overrule the third assignment of error.

{¶ 33} By Williams' second assignment of error, he argues that the trial court erred in granting summary judgment when a genuine issue of material fact remained regarding the amount due on the note. Williams contends that the trial court could not rely on Kahoalii's affidavit testimony regarding the amount due because she based her testimony on hearsay. We agree.

{¶ 34} Affidavits offered in opposition to summary judgment must be made on personal knowledge, must set forth admissible evidence, and must show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Civ.R. 56(E). " 'Personal knowledge' is 'knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.' " *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 26, quoting *Black's Law Dictionary* 875 (7th Ed.1999). " 'Information in affidavits that is not based on personal knowledge and does not fall under any of the permissible exceptions to the hearsay rule may be properly disregarded by the trial court when granting or denying summary judgment.' " *Ohio Receivables, LLC v. Dallariva*, 10th Dist. No. 11AP-951, 2012-Ohio-3165,

¶ 16, quoting *Cincinnati Ins. Co. v. Thompson & Ward Leasing Co.*, 158 Ohio App.3d 369, 2004-Ohio-3972, ¶ 13 (10th Dist.).

**{¶ 35}** Here, Kahoalii based her testimony regarding the amount owed on a payment history, which she attached to her affidavit. Williams asserts that the payment history constitutes inadmissible hearsay because it includes a business record of a prior servicing agent. Because Kahoalii's knowledge regarding the amount owed arises from hearsay, Williams argues, the trial court should have rejected Kahoalii's testimony as not meeting the Civ.R. 56(E) standard.

**{¶ 36}** In her affidavit, Kahoalii does not identify what entity created the payment history; instead, she just states that the payment history "reflect[s] payments and charges associated with the Loan Account." (Kahoalii Aff. at ¶ 11.) The payment history consists of two spreadsheets; one untitled and one titled "SN Servicing Corporation; Loan History General." *Id.* at Ex. E. The untitled spreadsheet has entries for transaction dates spanning from April 2, 2012 to January 10, 2019. The SN Servicing spreadsheet begins with an entry with a transaction date of January 14, 2019 and a transaction description of "New Loan." *Id.*

**{¶ 37}** Given the configuration of and information contained in the spreadsheets, we conclude that SN Servicing became the servicing agent for the Williams' loan on January 14, 2019. Consequently, the untitled spreadsheet—detailing transactions dated prior to January 14, 2019—is the business record of the prior servicer. This conclusion is buttressed by U.S. Bank's admission in its appellate brief that "records from prior servicers" are attached to Kahoalii's affidavit. (Appellee's Brief at 13.)

**{¶ 38}** In response to Williams' argument, U.S. Bank asserts that Kahoalii could rely on the prior servicer's payment history for the amount owed because that payment history is admissible evidence under the hearsay exception for business records. Pursuant to Evid.R. 803(6), business records that meet the enumerated requirements are excepted from the hearsay rule. Evid.R. 803(6) permits the admission of business records of an entity even when the entity was not the maker of the records, so long as the other requirements of Evid.R. 803(6) are met and circumstances indicate that the records are trustworthy. *Cach v. Alderman*, 10th Dist. No. 15AP-980, 2017-Ohio-5597, ¶ 17; *Dallariva*, 10th Dist. No. 11AP-951, 2012-Ohio-3165, at ¶ 20. Consequently, records need not be

prepared by the entity offering them if the entity received, maintained, and relied on the records in the ordinary course of business, and incorporated the records into the business records of the testifying entity. *Cach* at ¶ 17; *Dallariva* at ¶ 20.

{¶ **39**} Here, because Kahoalii did not acknowledge that another entity created the payment history, her affidavit does not address the elements necessary to establish the foundation for admission of an adoptive business record. Without that foundation, the payment history constitutes hearsay, which renders Kahoalii's testimony regarding the amount owed on the note inadmissible evidence. Accordingly, we conclude the trial court erred in granting U.S. Bank summary judgment, and we sustain Williams' second assignment of error.

{¶ **40**} For the foregoing reasons, we overrule Williams' first and third assignments of error, and we sustain his second assignment of error. Additionally, we grant Williams' motion to strike the evidentiary material attached to U.S. Bank's appellate brief. We reverse the judgment of the Franklin County Court of Common Pleas, and we remand this cause to that court for further proceedings consistent with law and this decision.

*Motion to strike granted;*
*judgment reversed; cause remanded.*

DORRIAN and MᶜGRATH, JJ., concur.