OPINION
{¶ 1} Defendant-appellant, Leslie Gilmer ("Gilmer"), appeals from a judgment of the Franklin County Court of Common Pleas, which granted summary judgment in favor of plaintiff-appellee, Waterfield Financial Corporation ("Waterfield"), and denied Gilmer's motion for summary judgment in this action seeking payment on a creditor's bill. For the reasons stated below, we reverse.
 {¶ 2} Waterfield is engaged in the business of residential mortgages. On April 8, 1998, Waterfield obtained a consent judgment against Gilmer in the amount of $170,155.21, plus post-judgment interest and attorney fees. The consent judgment entry provided:
Defendant Gilmer is hereby permanently enjoined from taking any action whatsoever with respect to the disposition of her assets without the prior written consent of Plaintiff Waterfield Financial Corporation until such time as the money judgment and award of attorneys' fees referenced herein have been satisfied in full.
 {¶ 3} On March 1, 2002, Waterfield obtained a Certificate of Judgment Lien in its favor against Gilmer in the amount of $178,301.71.
 {¶ 4} On June 14, 2002, Waterfield conducted a judgment debtor examination of Gilmer to determine her available assets. During that examination, Waterfield learned that Gilmer expected to receive an undivided half interest in her ex-husband's Individual Retirement Account ("IRA"). She was to receive that interest as a result of an April 27, 2001 Judgment Entry/Decree of Divorce, which the Franklin County Court of Common Pleas, Division of Domestic Relations, entered in case No. 00DR-02-922.
 {¶ 5} On January 16, 2003, Waterfield filed a Complaint on Creditor's Bill against Gilmer and her ex-husband, James Gilmer, in the Franklin County Court of Common Pleas. Waterfield alleged that Gilmer had no "sufficient real or personal property subject to execution to satisfy the judgment."
 {¶ 6} Waterfield's complaint identified the IRA Gilmer was to receive pursuant to the divorce decree as James Gilmer's McDonald Investments IRA account, and alleged that the current value of the entire IRA was approximately $440,000. Waterfield further alleged that Gilmer's interest in the IRA "is an asset of Defendant Leslie Gilmer but cannot be reached by [Waterfield] by execution or by any means available to it in law."
 {¶ 7} Waterfield demanded that James Gilmer's McDonald Investments IRA account be reduced to cash, and that Gilmer's interest be reduced to cash and applied to the outstanding judgment in Waterfield's favor.
 {¶ 8} On February 21, 2003, Gilmer answered the complaint pro se. She answered as follows:
1. Defendant Leslie Gilmer has no interest in former husband James Gilmers's [sic] Investments and IRA accounts.
2. Approximately August, 1999, even while incarcerated, Defendant, through her counsel, made a payment to Waterfield for $25,000.00, which was her cashed in value of 401K and funds Defendant received from sale of the marital residence.
3. Defendant Leslie Gilmer has no assets available to satisfy the debt.
Wherefore, Defendant demands that the complaint be dismissed.
 {¶ 9} On February 21, 2003, the trial court issued a subpoena to McDonald Investments to obtain any records concerning accounts held by James or Leslie Gilmer.
 {¶ 10} On April 15, 2003, Waterfield filed a notice of voluntary dismissal of James Gilmer from the case.
 {¶ 11} On April 24, 2003, the trial court filed an Agreed Entry, which stated:
Plaintiff [Waterfield] and Defendant Leslie Gilmer, by and through counsel, hereby agree and stipulate that should Defendant Leslie Gilmer liquidate any account in the name of Leslie Gilmer and/or account [number omitted] with McDonald Investments Inc., the proceeds shall be made payable to either Waterfield Financial Corp. or Defendant Leslie Gilmer's counsel, Thomas Franklin Schmidt. Defendant Leslie Gilmer is not prohibited from liquidating any such account but is prohibited from making the proceeds from that liquidation made payable to any person or entity other than [Waterfield] or Thomas Franklin Schmidt.
 {¶ 12} On October 23, 2003, Waterfield moved for summary judgment in its favor. Waterfield's memorandum in support of its motion stated, in part:
Here, there is no dispute that Gilmer does not have sufficient personal or real property sufficient to satisfy the judgment. * * * Gilmer admitted that she "has no assets available to satisfy the debt." * * *
Notwithstanding that Gilmer admitted she has no assets available, Waterfield attempted to satisfy the judgment with real or personal property to which it could attach or garnish. Waterfield attempted to determine Gilmer's assets in a judgment/debtor examination conducted on June 14, 2002. The only worthwhile asset found was a bank account. Immediately thereafter, on June 18, 2002, Waterfield attempted to garnish Gilmer's bank account. This attempt failed and the bank returned an answer of "No Attached Funds Available." * * *
Waterfield, however, learned that Gilmer has an IRA account with McDonald Investments for a total in excess of $70,000. The funds in the IRA account can be attached. See, e.g., In re Hageman (Bankr. S.D. Ohio 2001) (finding that an IRA account funded by a Qualified Domestic Relations Order rollover is a property interest that can be attached). Here, Gilmer received a one-half interest in James Gilmer's retirement plan. Gilmer's property interest emanated from the QDRO in the divorce proceeding. So too here, Waterfield is entitled to an Order liquidating the IRA account at McDonald Investments.
 {¶ 13} In support of this motion, Waterfield attached copies of Gilmer's answer on complaint on the creditor's bill, a photocopy of the 1998 consent judgment entry by which Gilmer confirmed the debt to Waterfield, a copy of a court docket sheet from that case, a copy of a praecipe indicating the certificate of judgment lien in favor of Waterfield, and a copy of another court document, which states that a non-wage garnishment attempt failed. Waterfield's motion also referenced testimony by Gilmer at the 2002 judgment debtor examination, a transcript of which was on file with the court. Waterfield did not attach to the motion either a copy of the Qualified Domestic Relations Order ("QDRO") or a copy of any document confirming Gilmer's entitlement to, or the existence of, the IRA.
 {¶ 14} On October 24, 2003, the court filed an agreed order, by which Gilmer agreed that she "will not withdraw, remove, take out, extract, liquidate or otherwise dispose of any money from her account [number omitted] with McDonald Investments Inc. or any other account in her name with McDonald Investments, Inc. until further order by this Court."
 {¶ 15} Gilmer filed a memorandum in opposition to Waterfield's motion for summary judgment and a cross-motion for summary judgment. She argued that In re Hageman (Bankr.S.D.Ohio 2001), 260 B.R. 852, cited by Waterfield, was not good law, and asserted that R.C. 2329.66 exempted the IRA from attachment. That section exempts from garnishment, attachment or sale to satisfy a judgment or order, a "person's right to receive a payment under any pension, annuity, or similar plan or contract * * * to the extent reasonably necessary for the support of the person and any of the person's dependents." R.C. 2329.66(A)(10)(b). It also exempts "the person's right in the assets held in, or to receive any payment under, any individual retirement account, individual retirement annuity, `Roth IRA,' or education individual retirement account." R.C. 2329.66(A)(10)(c). Gilmer did not attach any supporting affidavit or other documentary evidence.
 {¶ 16} Waterfield followed with a reply, to which it attached unauthenticated copies of subpoenaed documents from McDonald Investments, and gave the following account of transactions it perceived had occurred with regard to IRAs belonging to James Gilmer:
On February 1, 1999, James Gilmer, Defendant's exhusband, opened a self-directed IRA rollover account at McDonald Investments, presumably from a previous employer's retirement account. * * *
* * *
On or about May 12, 1999, James Gilmer opened a second IRA account with McDonald Investments by transferring certain stock and assets from his First IRA Account to a new self-directed IRA account in the amount of $234,264.20. * * *
Pursuant to James Gilmer and Defendant's Divorce Decree, Defendant became entitled to one-half of James Gilmer's interest in his First IRA Account. On July 18, 2002, James Gilmer transferred 100% of his interest in his First IRA Account to a cash account with McDonald Investments. On that same day, one-half of his interest was transferred to account [number omitted] pursuant to "divorce transfer". * * * On that same day, July 18, 2002, Defendant opened account [number omitted] with her one-half interest of James Gilmer's First IRA Account pursuant to "divorce transfer"[.] * * * It is this account that Waterfield seeks to attach, liquidate and use to satisfy its judgment against Defendant.
 {¶ 17} Waterfield argued that federal law offered no protection to Gilmer's IRA account, and that the current version of R.C. 2329.66
allowed creditors to attach self-directed IRA accounts in order to satisfy judgments. Waterfield also argued that Gilmer had violated prior court orders by withdrawing money from her IRA account, an account she only maintained for purposes of debt evasion. Such purposes, Waterfield argued, negated any exemption that might otherwise apply to the IRA.
 {¶ 18} In reply, Gilmer asked the court to strike or disregard the McDonald Investments documents because Waterfield failed to swear, certify or authenticate them in compliance with Civ.R. 56(C). Gilmer also denied any fraudulent purpose.
 {¶ 19} On January 19, 2004, the trial court granted summary judgment in favor of Waterfield, and denied Gilmer's request for summary judgment in her favor. The court noted, first, that a number of courts had rejected In re Hageman's interpretation of protections under federal law, based, in part, on language from Boggs v. Boggs (1997), 520 U.S. 833.
 {¶ 20} The trial court then analyzed R.C. 2329.66(A)(10). That section provides:
(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:
* * *
[10](b) Except as provided in sections * * * of the Revised Code, the person's right to receive a payment under any pension, annuity, or similar plan or contract, not including a payment from a stock bonus or profit-sharing plan or a payment included in division (A)(6)(b) or (10)(a) of this section, on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the person and any of the person's dependents, [except under specific conditions].
(c) Except for any portion of the assets that were deposited for the purpose of evading the payment of any debt and except as provided insections * * * of the Revised Code, the person's right in the assets held in, or to receive any payment under, any [IRA], individual retirement annuity, "Roth IRA," [or certain education IRAs], to the extent that the assets, payments, or benefits described in division (A)(10)(c) of this section are attributable to any of the following:
(i) Contributions of the person that were less than or equal to the applicable limits on deductible contributions to an [IRA] or individual retirement annuity in the year that the contributions were made * * *;
(ii) Contributions of the person that were less than or equal to the applicable limits on contributions to a Roth IRA or education [IRA] in the year that the contributions were made;
(iii) Contributions of the person that are within the applicable limits on rollover contributions under subsections * * * of the [Internal Revenue Code of 1986].
(Emphasis sic.)
 {¶ 21} The court found that subsection (c) of R.C. 2329.66(A)(10) did not apply to exempt Gilmer's IRA account from attachment by Waterfield "because plaintiff's complaint alleges that the divorce entry/decree granted `Defendant Leslie Gilmer an undivided half interest in Defendant James Gilmer's McDonald Investment IRA account,' and defendant Leslie Gilmer has failed to show that she made the contributions to the IRA."
 {¶ 22} The court also found that subsection (b) of R.C. 2329.66(A)(10) did not apply to exempt Gilmer's IRA account from attachment because an IRA account is not a "plan or contract" that is "similar" to a pension or annuity. Here, the court based its decision on In re Herbert (Bankr.N.D. Ohio 1992), 140 B.R. 174, 177-178.
 {¶ 23} At page 10, the court found further that, even if Gilmer's IRA account were eligible for an exemption under subsection (b), the account would only be exempt if payments from the account were "reasonably necessary for the support of the person." The court quoted from a discussion of those terms in In re Baumgardner (Bankr.S.D. Ohio 1993),160 B.R. 572, 573, and distinguished a case, In re Luman (Bankr.N.D. Ohio 1999), 238 B.R. 697, offered by Gilmer. The court did not determine whether payments from Gilmer's account were reasonably necessary for her support, but concluded: "In any event, an inquiry into whether funds are `reasonably necessary' for her support is relevant only if her IRA account were subject to an exemption; but, as previously discussed, O.R.C. 2329.66(A)(10)(b) is inapplicable to defendant Leslie Gilmer's IRA account."
 {¶ 24} On these grounds, the court granted Waterfield's motion for summary judgment and denied Gilmer's motion.
 {¶ 25} Gilmer appeals and assigns the following as error:
1. The Trial Court erred when it granted summary judgment in favor of the plaintiff, Waterfield Financial Corp.
2. The Trial Court erred when it denied the motion of defendant, Leslie Gilmer, for summary judgment.
3. The Trial Court erred when it concluded that R.C. § 2329.66(A)(10)(c) does not apply to an IRA that is funded through rollover contributions from another retirement account.
 {¶ 26} Appellate review of summary judgment motions is de novo. Heltonv. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 27} When proper evidence supports a motion for summary judgment, a non-moving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing a genuine triable issue. Civ.R. 56(E); Jackson v. Alert Fire Safety Equip., Inc. (1991),58 Ohio St.3d 48, 52. To establish the existence of a genuine issue of material fact, the non-moving party must do more than simply resist the allegations in the motion. Rather, that party must affirmatively set forth facts entitling him to relief. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. If the non-moving party "does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E).
 {¶ 28} Here, Waterfield brought a creditor's bill complaint pursuant to R.C. 2333.01. A creditor's bill is an equitable measure by which a party having a valid judgment against a debtor may secure a lien on certain assets held by a third-party if the debtor lacks sufficient personal or real property to satisfy the judgment. Gaib v. Gaib (1983),14 Ohio App.3d 97, 99. R.C. 2333.01 provides:
When a judgment debtor does not have sufficient personal or real property subject to levy on execution to satisfy the judgment, any equitable interest which he has in real estate as mortgagor, mortgagee, or otherwise, or any interest he has in a * * * joint-stock company, or in a money contract, claim, or chose in action, due or to become due to him, or in a judgment or order, or money, goods, or effects which he has in the possession of any person or body politic or corporate, shall be subject to the payment of the judgment by action.
 {¶ 29} Thus, Waterfield must prove three essential elements to succeed on its claim against Gilmer under R.C. 2333.01: (1) the existence of a valid judgment against Gilmer; (2) the existence of an interest held by Gilmer of the type enumerated in the statute; and (3) Gilmer's lack of sufficient assets to satisfy the judgment against her. Richardson v.Fairbanks (Oct. 28, 1997), Franklin App. No. 97APE03-384.
 {¶ 30} To establish the first element — the existence of a valid judgment against Gilmer — Waterfield attached what appear to be unauthenticated copies of the 1998 consent judgment entry, a court docket sheet, and a praecipe from a request for filing a certificate of judgment lien. Ordinarily, unauthenticated documents, including uncertified court records, may not support summary judgment. Thomas v. ARM Food, Inc.,
Cuyahoga App. No. 82863, 2003-Ohio-6925, at ¶ 9; Burton v. Triplett
(Feb. 14, 2002), Franklin App. No. 01AP-357; Powell v. Vorys, Sater,Seymour and Pease (1998), 131 Ohio App.3d 681, 685. Here, however, Gilmer did not object to their use and, therefore, the trial court did not err in considering them. Thompson v. Otterbein College (Feb. 6, 1996), Franklin App. No. 95APE08-1009. Accepting the validity of these documents, Waterfield submitted sufficient evidence to prove the existence of a valid judgment against Gilmer.
 {¶ 31} To establish the third element — a showing that Gilmer does not have sufficient assets to satisfy the judgment — Waterfield attached Gilmer's answer. In her answer, Gilmer stated that she "has no assets available to satisfy the debt." Therefore, Waterfield submitted sufficient evidence to prove that Gilmer did not have sufficient assets to satisfy the judgment.
 {¶ 32} Waterfield's submissions in support of the second element — the existence of an interest of the type enumerated in R.C. 2333.01 "due or to become due to" Gilmer — however, are more problematic. As to this element, Waterfield asserted that it "learned that Gilmer has an IRA account with McDonald Investments for a total in excess of $70,000," and cited In re Hageman for the proposition that such funds were subject to attachment. As to Gilmer's interest in the account, Waterfield asserted "Gilmer received a one-half interest in James Gilmer's retirement plan. Gilmer's property interest emanated from the QDRO in the divorce proceeding." Id. In its original motion, Waterfield cited to no evidence in the record to support this assertion, nor did it attach a copy of the QDRO. In its reply memorandum, Waterfield attached unauthenticated copies of McDonald Investments financial statements purporting to document the IRA rollover. However, Waterfield's attempt to prove the existence of an interest held by Gilmer through these documents was inadequate for purposes of summary judgment. As Gilmer argued to the trial court, unauthenticated documents are not sufficient to meet the Civ.R. 56 test for summary judgment. McClary v. M/I Schottenstein Homes, Franklin App. No. 03AP-777, 2004-Ohio-7047, at ¶ 44; Powell v. Vorys, Sater, supra.
 {¶ 33} Without documentation concerning the McDonald Investments accounts, we look to the other evidence contained in the record.
 {¶ 34} First, Gilmer's answer denied having an interest in her ex-husband's assets. Therefore, it provides no support for Waterfield on this point.
 {¶ 35} Second, the judgment debtor examination established that Gilmer had personal property that included a car, some jewelry, and some furniture. It also established that she expected to receive a portion of her ex-husband's IRA, pursuant to their divorce decree. That examination included the following testimony:
Q. [by Waterfield's Counsel] Did you receive any part of your ex-husband's pension or retirement benefits as a result of the divorce?
A. [by Gilmer] I'm going to be getting an IRA. I have met with my financial person, but we haven't cleared that up yet.
Q. His IRA?
A. It is going to be rolled over into my name, and I know I can't touch that until I am about 60 years old. So I've got about five and a half more years.
Q. Do you know how much that will be?
A. No, I don't even know how much —
Q. You don't have any type of estimate?
A. I think it is around a couple hundred thousand dollars. I know there's been losses and stuff, so I don't know how much of that I am going to get.
* * *
Q. You think this transfer of the funds into your name, as far as an IRA, will take place in the next six months to a year?
A. Probably. Hopefully.
Q. And this is his IRA through his individually owned business?
A. No. He retired from the phone company. This is money he put in stocks and bonds and all that kind of stuff.
Q. Which phone company?
A. It was Ohio Bell, and then it went into Ameritech. When he retired, he got a certain amount. I'm getting part of that.
(Judgment Debtor Exam Tr., at 23-24.)
 {¶ 36} Gilmer's testimony established only that she expected to receive funds from her ex-husband's IRA, "probably," "hopefully." Neither the examination, nor any other authenticated evidence before the trial court, established the terms of the QDRO, the conditions, if any, for receipt of the IRA, the confines of Gilmer's interest in the IRA, the actual existence of the IRA, or the value of it. Therefore, Waterfield did not present evidence sufficient to show an interest "due or to become due to" Gilmer under R.C. 2331.01.
 {¶ 37} In coming to this conclusion, we acknowledge that Gilmer has not raised for our consideration the question whether the evidence before the trial court was sufficient for summary judgment purposes. In Statev. Peagler (1996), 76 Ohio St.3d 496, 499, the court confirmed the basic rule that "an appellate court will not consider any error that counsel could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." The court also held:
While an appellate court may decide an issue on grounds different from those determined by the trial court, the evidentiary basis upon which the court of appeals decides a legal issue must have been adduced before the trial court and have been made a part of the record thereof.
Id., at paragraph one of the syllabus. Here, Gilmer raised the issue before the trial court, which apparently declined to address it. In addition, the trial court record is adequate for this court to determine de novo that Waterfield failed to present sufficient evidence on the existence of Gilmer's interest under R.C. 2333.01.
 {¶ 38} In addition, even if we were to find that Gilmer's testimony, or even the unauthenticated documentation evidencing the McDonald Investments accounts, was enough to show that Gilmer has an interest in an IRA account held by McDonald Investments, that evidence would still not be enough to prove that Waterfield is entitled to it as a matter of law, given the exemptions found in R.C. 2329.66(A)(10). Interpreting R.C. 2329.66, the Ohio Supreme Court has stated:
[E]xemption statutes * * * are in derogation of the commonlaw rights of creditors. * * * Thus, as to any property or rights that are subject to attachment or execution, any claim by an individual for an exemption from the claims of his creditors must be based upon a statutory provision for such exemption. * * * The legislature has the exclusive authority to declare what property shall be exempt from the purview of collection laws.
Ohio Bell Tel. Co. v. Antonelli (1987), 29 Ohio St.3d 9, 11.
 {¶ 39} Moreover, "[t]he legislature's purpose, in exempting certain property from court action brought by creditors, was to protect funds intended primarily for maintenance and support of the debtor's family."Daugherty v. Central Trust Co. of Northeastern Ohio (1986),28 Ohio St.3d 441, 445. Thus, a debtor's exempt personal earnings retain their statutory exemption when deposited in a bank checking account "so long as the source of the exempt funds is known or reasonably traceable." Id. In so concluding, the court reasoned that the legislative intent in creating the exemption "would be frustrated if exempt funds were automatically deprived of their statutory immunity when deposited in a checking account which a depositor commonly maintains in order to pay by check those regular subsistence expenses he incurs." Id.
 {¶ 40} Several Ohio appellate courts have relied on this rationale in concluding that traceable pension and social security funds deposited in bank accounts are exempt. First Wisconsin Natl. Bank of Waukesha v.Henck (Jan. 20, 1989), Lucas App. No. L-87-400; Haggerty v. George (Dec. 13, 2001), Mahoning App. No. 00-C.A.-86. Accord, Grant Hosp. v. O'Nail
(Mar. 4, 1997), Franklin App. No. 96APE06-793.
 {¶ 41} A QDRO permits a domestic relations court to assign to an alternate payee the right to receive all or a portion of benefits payable with respect to a participant in a plan qualifying under the Employee Retirement Income Security Act ("ERISA"), Section 1001 et seq., Title 29, U.S.Code. Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 180; Taylor v.Taylor (1989), 44 Ohio St.3d 61, syllabus. Thus, pursuant to ERISA, the former spouse becomes an alternate payee and is considered to be a beneficiary, and not a participant, under the plan. Hoyt, supra. Congress's stated purpose in allowing the assignment of a retirement plan pursuant to a QDRO is to improve "the delivery of retirement benefits and provide greater equity under private pension plans for workers, their spouses and dependents by taking into account changes in work patterns, the status of marriage as an economic partnership, and the substantial contribution to that partnership of spouses who work both in and outside the home." Section 414(p)(8), Title 26, U.S. Code, as amended by the Retirement Equity Act of 1984, P.L. 98-397, 98 Stat. 1426 (1984), as quoted in Hoyt, supra.
 {¶ 42} What appears to be missing from the court's analysis of whether Gilmer's IRA is exempt under R.C. 2329.66 is the QDRO itself. For instance, the content of the QDRO could be critical to determining whether the IRA rollover constituted a "contribution" by Gilmer to her own IRA for purposes of R.C. 2329.66. Although the trial court and the parties allude to the contents of the QDRO, no one made it a part of the record. Nor did either party include any other portion of the domestic relations court record that might have helped settle the question of whether Gilmer "contributed" to the IRA for purposes of the exemption statute.
 {¶ 43} In addition, Waterfield contends that Gilmer rolled over the IRA in order to evade the payment of her debt and so cannot utilize the R.C. 2329.66(A)(10)(c) exemption, an allegation Gilmer denied. Waterfield has not presented evidence of fraud, relying instead on the timing of Gilmer's actions. As the question of Gilmer's motive remains unexplored, there remains a question of fact.
 {¶ 44} In short, Waterfield failed to support its motion for summary judgment with sufficient evidence of the type and quality that would permit the trial court to conclude, "reasonable minds could reach only an adverse conclusion as to the party opposing the motion." Norris v. OhioStd. Oil Co. (1982), 70 Ohio St.2d 1, 2. If a court must rely upon surrounding facts and circumstances, the court "`should refuse to grant a motion for summary judgment until the facts and circumstances have been sufficiently developed to enable the court to be reasonably certain that it is making a correct determination of the question of law.'" WashingtonCty. Farm Bur. Co-op Assoc. v. B. O.R.R. Corp. (1972),31 Ohio App.2d 84, 91, quoting Palmer v. Chamberlin (C.C.A. 5),191 F.2d 532, 540. Here, the court reached legal conclusions without sufficient factual information. Considering the dearth of proper evidence presented in support of Waterfield's motion, summary judgment in favor of Waterfield was, at best, premature. Thus, we sustain Gilmer's first and third assignments of error.
 {¶ 45} Gilmer presented no evidence supporting her motion for summary judgment, which rested on the argument that, there being no triable issues, Gilmer, not Waterfield, was entitled to judgment as a matter of law.[1] Gilmer has not presented evidence establishing a lack of a genuine issue of fact entitling her to judgment as a matter of law, and so we overrule her second assignment of error.
 {¶ 46} There being genuine issues of fact remaining for trial, we find the trial court erred in granting summary judgment on Waterfield's motion, but did not err in denying summary judgment on Gilmer's motion. Thus, we sustain Gilmer's first and third assignments of error, overrule her second assignment of error, and affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas. We therefore remand this matter for further proceedings in light of this decision.
Judgment affirmed in part and reversed in part; case remanded.

Petree and Deshler, JJ., concur.
Deshler, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Although, ordinarily, a denial of a motion for summary judgment is not a final appealable order, where, as here, the matter is submitted upon cross-motion and a final judgment was entered against the appellant, this court properly may review the denial of the cross-motion. See, e.g., Cincinnati Ins. Co. v. Thompson Ward Leasing Co.,158 Ohio App.3d 369, 374, 2004-Ohio-3972.