**[Cite as *Tower 10, L.L.C. v. 10 W. Broad Owner, L.L.C.*, 2020-Ohio-3554.]**
IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Tower 10, LLC,                                              :

      Plaintiff-Appellant/                             :
      Cross-Appellee,

                            :                          No. 18AP-998
v.                                                                          (C.P.C. No. 17CV-6166)

                            :
10 W Broad Owner, LLC,                                (REGULAR CALENDAR)

                            :
      Defendant-Appellee/
      Cross-Appellant.                                  :

Red Capital Group, LLC,                               :

      Plaintiff-Appellee,                              :
                                                      No. 18AP-999
v.                                                                  :       (C.P.C. No. 17CV-6447)

Tower 10, LLC,                                             :       (REGULAR CALENDAR)

      Defendant-Appellant,                         :
      Cross-Appellee,

                            :
10 W Broad Owner, LLC,

                            :
      Defendant-Appellee/
      Cross-Appellant,                                  :

City of Columbus et al.,                               :

      Defendants-Appellees.                        :

------

# D E C I S I O N

Rendered on June 30, 2020

------

**On brief**: *James E. Arnold & Associates, LPA*, *James E. Arnold*, *Gerhardt A. Gosnell, II*, and *Damion M. Clifford*, for Tower 10, LLC. **Argued**: *Damion M. Clifford*.

**On brief**: *William M. Harter, Russell J. Kutell*, and

*Zachary L. Stillings*, for 10 W Broad Owner, LLC.  **Argued**: *William M. Harter*.

**On brief**: *Zeiger, Tigges & Little, LLP, Steven W. Tigges, Stuart G. Parsell*, for Red Capital Group, LLC. **Argued**: *Stuart G. Parsell*.

APPEALS from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1}   Plaintiff-appellant, Tower 10, LLC ("Tower 10"), appeals from a judgment of the Franklin County Court of Common Pleas granting the motions for summary judgment filed by defendants-appellees, 10 W Broad Owner, LLC ("10 W Broad") and Red Capital Group, LLC ("Red Capital"), and denying the motion for summary judgment filed by Tower 10. For the reasons which follow, we reverse the judgment of the trial court.

{¶ 2}   Tower 10 owns the LeVeque Tower located at 50 West Broad Street in Columbus, Ohio. 10 W Broad owns the One Columbus building located at 10 West Broad Street in Columbus, Ohio. Red Capital is a tenant in the One Columbus building.

{¶ 3}   LeVeque Tower and One Columbus building are both multi-story high rise buildings. The second story of LeVeque Tower connects to the second story of One Columbus building through an enclosed skywalk which passes over the public right-of-way at Wall Street (the "Wall Street skywalk"). A parking garage is located directly behind and to the north of LeVeque Tower at 40 North Front Street in Columbus, Ohio. Another enclosed skywalk passes over the public right-of-way at Lynn Street and connects the second floor of LeVeque Tower to the second floor of the parking garage (the "Lynn Street skywalk"). The present dispute between the parties concerns these skywalks and the walkway which connect them.

{¶ 4}   On January 21, 1985, Tower 10's and 10 W Broad's predecessors-in-interest executed a document titled "Declaration of Restrictions, Covenants and Easements." (Tower 10 Compl., Ex. 1 (hereafter, "Declaration."))  Neither One Columbus building nor the parking garage existed when the parties executed the Declaration. The Declaration identified One Columbus Building Associates, Ltd. (the "partnership") as the "owner of an option to purchase" the real estate located at the corner of Broad Street and High Street in Columbus, Ohio "on which it [was] intending to build an office building." (Declaration, Recital A.) The partnership would construct One Columbus building on the land identified

in the Declaration. The Declaration identified an Ohio joint venture as the entity "intend[ing] to develop * * * a parking garage" on the land located at 40 North Front Street. (Declaration, Recital C.) The Declaration identified Katherine LeVeque as the owner of LeVeque Tower.

**{¶ 5}** The parties to the Declaration granted "easements and cross easements" to each other for the "support and tie-in" and "construction, maintenance, * * * and operation" of the Wall Street and Lynn Street skywalks. (Declaration, Section 1.03(a) & (b).) The parties agreed to work together to obtain easements from the city to permit them to place the skywalks over Wall Street and Lynn Street. The partnership had the "responsibility for the construction of the Skywalks" and would "pay all costs with respect thereto." (Declaration, Section 1.04.)

**{¶ 6}** Each party to the Declaration also granted the other parties easements through their respective buildings. Katherine LeVeque granted the partnership and the joint venture "an easement for pedestrian traffic from the Wall Street Skywalk through a portion of the second floor of the LeVeque Tower to the Lynn Street Skywalk." (Declaration, Section 2.01(b).) The partnership granted Katharine LeVeque and the joint venture "an easement for pedestrian traffic from the Wall Street Skywalk through a portion of the second level lobby * * * to and through a portion of the first floor lobby or public area of the [One Columbus] Building." (Declaration, Section 2.01(a).) The joint venture granted the partnership and Katherine LeVeque "an easement for pedestrian traffic from the Lynn Street Skywalk * * * into the Parking Garage." (Declaration, Section 2.01(c).)

**{¶ 7}** The Declaration identified the entire pathway, from One Columbus building through "the Wall Street Skywalk, the second floor of the LeVeque Tower, and the Lynn Street Skywalk to and from the Parking Garage," as the "[w]alkway." (Declaration, Section 2.02.) The Declaration specified that "the [w]alkway" would "be maintained open at all times during the normal business hours of the [One Columbus] Building, or at such other times as agreed to by the parties." (Declaration, Section 2.05.) The easements granted in the Declaration were "for the exclusive benefit of the owners and operators" of the respective buildings, as well as the "tenants, and the employees, contractors, agents and invitees of all of them, in order to provide convenient access between such properties and the Parking Garage." (Declaration, Section 2.09(a).) The Declaration was "deemed to run with and be appurtenant to the real estate" and was binding on each parties' "successors

and assigns." (Declaration, Section 6.01.) The easements granted in the Declaration had "no termination." (Declaration, Section 8.02.) The Declaration was signed, properly acknowledged, and recorded.

{¶ 8} On October 1, 1985, the city of Columbus executed a deed granting the parties to the Declaration, their successors and assigns, aerial encroachment easements over Wall Street and Lynn Street ("city easement"). The One Columbus building, the parking garage, and the skywalks were constructed between 1986-87.

{¶ 9} During construction, doors were installed on either side of the walkway. The doors are located between the parking garage and the Lynn Street skywalk, between LeVeque Tower and the Wall Street skywalk, and between the Wall Street skywalk and One Columbus building. Security keycard readers were installed next to the doors in the walkway, and One Columbus issued keycards to its tenants and employees.

{¶ 10} Since the walkway opened in 1987, the doors to the walkway have been unlocked between 6:00 a.m. and 6:00 p.m. on weekdays. As such, the "[g]eneral public" can freely access the walkway "during * * * working hours" throughout the week. (Gingerich Depo. at 10; Prelim. Inj. Hearing Tr. Vol. I at 64.) Although the doors to the walkway are locked after working hours and on the weekends, One Columbus workers' keycards have provided them access to the walkway at any time, 24 hours a day, seven days a week ("24/7"). One Columbus workers' 24/7 keycard access to the walkway continued without interruption from the time the walkway opened until June 23, 2017, when Tower 10 deactivated One Columbus workers' keycard access to the walkway.

{¶ 11} Tower 10 acquired the LeVeque Tower in the first quarter of 2011. Tower 10 renovated and converted LeVeque Tower from a building consisting primarily of office space, to a mixed-use space consisting of a hotel, a restaurant, a bar, a coffee shop, apartments, and condominiums in addition to office space. LeVeque Tower residents, office tenants, and hotel personnel have keycards which provide them with 24/7 access to the parking garage through the Lynn Street skywalk.

{¶ 12} Robert Meyers, the majority owner of Tower 10, explained he "verified" One Columbus building's normal business hours before restricting the afterhours access to the walkway by sending an e-mail to 10 W Broad's real estate services coordinator. The real estate services coordinator informed Tower 10 that the "normal business hours" of One Columbus building were "Monday through Friday 6:00am-6:00pm Saturday 8:00am–

12:00 pm." (O'Harra Depo. Ex. 16.) Although Tower 10 initially restricted One Columbus workers' access to the walkway between 6:00 a.m. and 6:00 p.m. on weekdays, Tower 10 later restored One Columbus workers' ability to use their keycards between 8:00 a.m. and 12:00 p.m. on Saturdays.

{¶ 13} On July 12, 2017, in case No. 17CV-6166, Tower 10 filed a complaint against 10 W Broad seeking a declaratory judgment. Tower 10 asked the court to find that its "restriction of access to LeVeque Tower via the skywalk from One Columbus outside of One Columbus's stated business hours [was] in full accord with the [Declaration]." (Tower 10 Compl. at ¶ 29.) On July 20, 2017, 10 W Broad filed an answer and counterclaim seeking a declaratory judgment and injunctive relief. 10 W Broad asked the court to find that Tower 10's decision to restrict One Columbus workers' access to the walkway was in direct violation of the Declaration and the city easements. 10 W Broad alternatively asked the court to find that One Columbus had acquired a prescriptive easement to access the walkway at any time.

{¶ 14} On July 20, 2017, in case No. 17CV-6447, Red Capital filed a complaint against Tower 10 seeking declaratory and injunctive relief. Red Capital asked the court to find that Tower 10 had violated Red Capital's easement right to access the walkway, whether the right existed by express grant, estoppel, or prescription.

{¶ 15} 10 W Broad and Red Capital ("collectively appellees") each filed motions seeking a temporary restraining order and preliminary injunction against Tower 10. On July 20, 2017, the respective trial courts granted appellees temporary restraining orders against Tower 10. The trial court consolidated the cases on July 28, 2017.

{¶ 16} On August 3 and 4, 2017, a magistrate held a hearing on appellees' motions for preliminary injunction. Dan Cvetanovich explained at the hearing that he had worked in the One Columbus building and parked in the parking garage continually since July 1, 1987. Cvetanovich affirmed that throughout that "entire 30-year time period" he always had "24/7 access" to the walkway by keycard. (Prelim. Inj. Hearing Tr. Vol. I. at 66.) James Henson, the senior director and general counsel for Red Capital, noted that the "vast majority" of Red Capital's employees parked in the parking garage and used their keycards to access the walkway "24/7." (Prelim. Inj. Hearing Tr. Vol. I at 251-52.) Connie Hale explained at the hearing that, although she recently began working as One Columbus building manager in March 2017, she previously worked as One Columbus building

manager for two and one-half years in the early 1990's. Hale affirmed that "based on [her] experiences that [she] had in the early 1990s as the manager" of One Columbus, it was her "observation and understanding that - - that One Columbus and LeVeque had agreed that One Columbus workers would have 24/7/365 card access to that skywalk." (Prelim. Inj. Hearing Tr. Vol. I at 375.)

{¶ 17} On August 9, 2017, the magistrate issued a decision granting appellees' respective motions for preliminary injunction. Tower 10 filed objections to the magistrate's decision. The trial court issued a decision and entry overruling Tower 10's objections and adopting the magistrate's decision as its own on November 30, 2017.

{¶ 18} On April 18, 2018, Tower 10, 10 W Broad, and Red Capital filed cross-motions for summary judgment. Tower 10 acknowledged in its motion that Katherine "LeVeque permitted the installation of a keycard system allowing only One Columbus tenants with a keycard to access the walkway outside of One Columbus' normal business hours." (Tower 10 Mot. for Summ. Jgmt. at 4.) However, Tower 10 asserted that section 2.05 of the Declaration obligated Tower 10 to only keep the walkway open during One Columbus' normal business hours, from 6:00 a.m. to 6:00 p.m. Monday through Friday and 8:00 a.m. to 12:00 p.m. on Saturdays. Tower 10 further asserted that any purported agreement to provide One Columbus workers with a permanent right to access the walkway after normal business hours would need to comply with the statute of frauds and R.C. 5301.25(A).

{¶ 19} 10 W Broad and Red Capital argued in their respective motions for summary judgment that Eli Gingerich's testimony, Hale's testimony, and the parties' 30-year course of conduct demonstrated that the parties to the Declaration agreed to provide One Columbus workers with 24/7 keycard access to the walkway. Gingerich, LeVeque Tower building manager from 1980 to 2005, affirmed it was his "understanding" that One Columbus workers' 24/7 keycard access to the walkway was "by agreement of the owners" of One Columbus building and LeVeque Tower. (Gingerich Depo. at 14-15.) Alternatively, 10 W Broad asserted it had acquired an easement by prescription and Red Capital asserted it had acquired an easement by estoppel to access the walkway at any time.

{¶ 20} On May 16, 2018, the parties filed memoranda contra responding to the motions for summary judgment. Tower 10 asserted in its memorandum contra there was no evidence of an "oral agreement under Section 2.05 of the Declaration," and that any purported oral agreement would violate "the Statute of Frauds and R.C. 5301.25(A)."

(Tower 10 Memo. in Opp. to Summ. Jgmt. at 1.) Red Capital noted in its memorandum contra that Colin LeVeque, the son of the deceased Katherine LeVeque and a signatory to the 1985 Declaration, testified that his mother had to have agreed to provide One Columbus workers with 24/7 keycard access to the walkway. Appellees both argued that Tower 10's contentions regarding the statute of frauds and R.C. 5301.25(A) lacked merit, as the written and recorded Declaration provided appellees with perpetual easement rights in the walkway. Appellees further asserted that, even if the statute of frauds were applicable, the parties conduct satisfied the partial performance exception and removed the agreement to provide One Columbus workers 24/7 keycard access to the walkway from the statute of frauds.

{¶ 21} On November 20, 2018, the trial court issued a decision granting appellees' respective motions for summary judgment and denying Tower 10's motion for summary judgment. The court concluded that the "testimony of Hale, Gingerich, and LeVeque establishe[d] that the parties to the easement agreed to allow the One Columbus tenants and their employees unrestricted access to the walkway via the use of keycards." (Nov. 20, 2018 Decision at 11.) As the Declaration was written and "recorded and specifically contemplated that the parties thereto could agree to access of the walkway outside of 'normal business hours,' " the court held that the agreement to provide One Columbus workers with 24/7 keycard access to the walkway did not modify the Declaration or violate the statute of frauds. (Nov. 20, 2018 Decision at 12-13.) The court concluded appellees had "an express easement" to access the "walkway beyond normal business hours by use of a keycard system," and declined to address appellees' alternative arguments for easements by prescription or estoppel. (Nov. 20, 2018 Decision at 16.)

{¶ 22} The court issued a declaratory judgment stating the Declaration provided 10 W Broad and Red Capital with 24/7 "continuous access" to the walkway. (Dec. 18, 2018 Final Jdgt. Entry at 2.) The court permanently enjoined Tower 10 from blocking, obstructing, or interfering with appellees' access "to and through any portion of the Walkway at any time * * * by way of keycards or other mutually agreeable means of uninterrupted, continuous ingress and egress through the Walkway." (Dec. 18, 2018 Final Jgmt. Entry at 3.)

{¶ 23} Tower 10 appeals, presenting the following errors for our review:

[I.] The trial court erred in granting summary judgment in favor of 10 W Broad Owner and Red Capital Group.

[II.] The trial court erred in denying Tower 10's motion[] for summary judgment.

{¶ 24} 10 W Broad has filed a conditional cross-appeal, presenting the following error for our review:

If the Court finds that an express easement did not exist (which the Court should not), the trial court erred in failing to find an easement by prescription.

{¶ 25} Tower 10's first assignment of error asserts the trial court erred in granting appellees' respective motions for summary judgment, as the Declaration does not provide appellees with an easement to access the walkway after normal business hours. Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-moving party, and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Id.* at ¶ 29. De novo appellate review means the court of appeals independently reviews the record and affords no deference to the trial court's decision. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 26} When seeking summary judgment on grounds the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the non-moving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the

non-moving party has no evidence to support its claims. *Id.* If the moving party meets its burden, then the non-moving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Id.*

{¶ 27} "An easement is a non-possessory property interest in the land of another." *Pomante v. Marathon Ashland Pipe Line, LLC*, 187 Ohio App.3d 731, 2010-Ohio-1823, ¶ 7 (10th Dist.), citing *Andrews v. Columbia Gas Transm. Corp.*, 544 F.3d 618, 624 (6th Cir.2008). An easement "entitles the owner of the easement, the dominant estate, to a limited use of the land in which the interest exists, the servient estate." *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, L.L.C.*, 138 Ohio App.3d 57, 66 (4th Dist.2000), citing *Alban v. R.K. Co.*, 15 Ohio St.2d 229, 231 (1968). Easements are either appurtenant or in gross. *Merril Lynch Mtge. Lending, Inc. v. Wheeling & Lake Erie Ry. Co.*, 9th Dist. No. 24943, 2010-Ohio-1827, ¶ 11. "An easement appurtenant runs with the land and is transferable to future buyers," while an "easement in gross is personal only to the grantee and, therefore does not run with the land." *Walbridge v. Carroll*, 172 Ohio App.3d 429, 2007-Ohio-3586, ¶ 17 (6th Dist.). *Accord Lone Star Steakhouse & Saloon of Ohio, Inc. v. Ryska*, 11th Dist. No. 2003-L-192, 2005-Ohio-3398, ¶ 24.

{¶ 28} Easements may be created by grant, implication, prescription, or estoppel. *Pomante* at ¶ 7. "When an easement is created by express grant, the extent and limitations of the easement depend upon the language of the grant." *Id.*, citing *Alban* at 232. *Accord State ex rel. Wasseman v. Fremont*, 140 Ohio St.3d 471, 2014-Ohio-2962, ¶ 28; *Apel v. Katz*, 83 Ohio St.3d 11, 17 (1998). "There are no particular words required to create an easement by express grant, provided that the intent of the parties is clear from the document." *Cincinnati Entertainment Assocs., Ltd. v. Bd. of Commrs.*, 141 Ohio App.3d 803, 813 (1st Dist.2001).

{¶ 29} When the terms of an easement "are clear and unambiguous, the construction of an express easement presents an issue of law." *Pomante* at ¶ 7, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. "If there is no specific delineation of the easement, or if the document is ambiguous, the court must then look to the circumstances surrounding the transaction in order to determine the intent of the parties." *Delaware Golf Club, LLC v. Dornoch Estates*

*Homeowners Assn.*, 5th Dist. No. 19 CAE 04 0027, 2020-Ohio-880, ¶ 43, citing *Hemmelgarn v. Huelskamp & Sons, Inc.*, 3d Dist. No. 17-19-07, 2019-Ohio-5298, ¶ 13. However, when the terms of an easement are unambiguous "a court cannot create new terms by finding an intent not expressed in the language used." *Id.* at ¶ 42, citing *Alexander* at 246. *Accord Murray v. Lyon*, 95 Ohio App.3d 215, 219 (9th Dist.1994) (noting that "[i]f the intent is plain from the face of the document, then it is not necessary to resort to rules of construction to determine the easement's effect").

{¶ 30} In the Declaration, Katherine LeVeque granted One Columbus owners, tenants, and employees an easement appurtenant to access the portion of the walkway passing through the second floor of LeVeque Tower. The Declaration provided as follows regarding the walkway:

> Except in the case of emergency, the Walkway shall be maintained open at all times during the normal business hours of the [One Columbus] Building, or at such other times as agreed to by the parties hereto, or their respective successors or assigns.

(Declaration, Section 2.05.)

{¶ 31} The Declaration clearly and unambiguously provides that the walkway must be maintained open during normal business hours of One Columbus building. The walkway is maintained open whenever someone may freely pass through the walkway without interruption. There is no language in the Declaration providing One Columbus workers with a right to access the walkway outside normal business hours.

{¶ 32} The provision in section 2.05 stating that the parties or their successors could agree to maintain the walkway open at times other than normal business hours merely restated rights the property owners always possessed. Indeed, while the Declaration provided One Columbus with a permanent easement right to access the walkway during normal business hours, the owners of LeVeque Tower and One Columbus building could always agree to provide access to the walkway outside of normal business hours. The terms of such an agreement between the property owners would necessarily dictate the extent and duration of the property rights transferred.

{¶ 33} The record demonstrates that Katharine LeVeque agreed to provide One Columbus workers with 24/7 keycard access to the walkway. Both Hale and Gingerich testified it was their understanding that the building owners had agreed to provide One

Columbus workers with 24/7 keycard access to the walkway. Gingerich noted the building owners agreed to the keycard access "[b]efore the building was built," and affirmed that the keycard readers were present in the walkway when the walkway opened in 1987. (Gingerich Depo. at 19.) Colin LeVeque noted that "based on how the buildings were operated," his mother "would have had to agree" to provide One Columbus workers with access to the walkway after normal business hours before such access could occur. (Colin LeVeque Depo. at 91.)

{¶ 34} Accordingly, as One Columbus workers had keycard access to the walkway when the walkway opened in 1987, Katherine LeVeque had to have agreed to allow such access. However, while the evidence demonstrates Katherine LeVeque granted One Columbus workers permission to access the walkway after normal business hours, there is no evidence demonstrating that Katherine LeVeque agreed to grant One Columbus a permanent easement to access the walkway after normal business hours. *Compare Varjaski v. Pearch*, 7th Dist. No. 04 MA 235, 2006-Ohio-5268, ¶ 12, quoting *DePugh v. Mead Corp.*, 79 Ohio App.3d 503, 511 (4th Dist.1992) (noting that "[i]n contrast to an easement, a license is 'a personal, revocable, and nonassignable privilege, conferred either by writing or parol, to do one or more acts upon land without possessing any interests in the land' "). Colin LeVeque noted that he did not "remember ever talking" to his mother "about modifying the easement or declarations of easement," and stated that his mother "would have talked to [him]" if she intended to modify the easements. (Colin LeVeque Depo. at 89.)

{¶ 35} Moreover, any agreement to grant One Columbus an easement to access the walkway after normal business hours would have to comply with the statute of frauds. "[T]he term 'statute of frauds' refers to a provision that requires that certain agreements be in writing. Where a plaintiff attempts to enforce an agreement against a defendant, the defendant may raise the statute of frauds as an affirmative defense."[1] *ELM Invests., Inc. v. BP Exploration & Oil, Inc.*, 10th Dist. No. 11AP-1000, 2012-Ohio-2950, ¶ 11. In Ohio, the statute of frauds is embodied in R.C. Chapter 1335. *Olympic Holding Co., L.L.C. v. ACE Ltd.*, 122 Ohio St.3d 89, 2009-Ohio-2057, ¶ 30; *McGee v. Tobin*, 7th Dist. No. 04 MA 98, 2005-Ohio-2119, ¶ 15. R.C. 1335.05 provides that "[n]o action shall be brought whereby to

---

[1] Tower 10 properly raised the statute of frauds as an affirmative defense in its answer to Red Capital's complaint. *See* Civ.R. 8(C).

charge" a person upon a contract concerning an interest in land unless the agreement "is in writing and signed by the party to be charged herewith." R.C. 1335.04 provides that no interest in land "shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent." "Agreements that do not comply with the statute of frauds are unenforceable." *Olympic Holding* at ¶ 32, citing *Hummel v. Hummel*, 133 Ohio St. 520 (1938), paragraph one of the syllabus.

{¶ 36} Thus, the statute of frauds seeks to "prevent 'frauds and perjuries' " by informing "the public and judges of what is needed to form a contract and by encouraging parties to follow these requirements by nullifying those agreements that do not comply." *Olympic Holding* at ¶ 33, quoting *Wilber v. Paine*, 1 Ohio 251, 255 (1824). "For an easement to arise by grant, the conveyance must comply with the statute of frauds." *Evans v. Blenry Ltd.*, 10 Dist. No. 75AP-453 (June 29, 1976). Accordingly, "[a] parol agreement does not modify an easement agreement because it would run afoul of the statute of frauds. " *Johnson v. New Direction IRA F.B.O. King C. Lam*, 8th Dist. No. 106628, 2018-Ohio-4608, ¶ 34.

{¶ 37} Gingerich and Hale both admitted they never saw a written agreement regarding 24/7 keycard access to the walkway. Indeed, there is no evidence in the record of a written agreement purporting to provide One Columbus with a permanent right to access the walkway outside normal business hours. Accordingly, any parol agreement to provide One Columbus workers with keycard access to the walkway could not modify the rights granted in the Declaration.

{¶ 38} Appellees contend the partial performance exception to the statute of frauds removes the agreement to provide One Columbus workers with 24/7 keycard access to the walkway from the operation of the statute. Appellees assert the facts in the present case demonstrate the partial performance exception, as One Columbus purchased and installed the keycard readers in the walkway, distributed keycards to its tenants, and One Columbus tenants and employees have used keycards to access the walkway afterhours for 30 years. Hale noted in her deposition that "One Columbus owned the card readers that [were] attached to LeVeque." (Hale Depo. at 34.)

{¶ 39} A party seeking to invoke the partial performance exception to the statute of frauds must establish that "he has performed acts in exclusive reliance on an oral contract, and that such acts have changed his position to his prejudice." *LHPT Columbus The, LLC*

*v. Capitol City Cardiology, Inc.*, 10th Dist. No. 14AP-264, 2014-Ohio-5247, ¶ 35, citing *DeAscentis v. Margello*, 10th Dist. No. 08AP-522, 2008-Ohio-6821, ¶ 26. *Accord Kiser v. Williams*, 9th Dist No. 24968, 2010-Ohio-3390, ¶ 15, quoting *Hughes v. Oberholtzer*, 162 Ohio St. 330, 337 (1954) (noting that the doctrine of part performance removes a case from the operation of the statute of frauds "if the 'acts of the parties * * * are such that it is clearly evident that such acts would not have been done in the absence of a contract' " and there is " 'no other explanation for the performance of such acts except a contract containing the provisions contended for by the plaintiff' "); *Phoenix Concrete v. Reserve-Creekway, Inc.*, 100 Ohio App.3d 397, 405 (10th Dist.1995).

{¶ 40} "The doctrine of part performance is based in equity. It is applied in situations where it would be inequitable to permit the statute [of frauds] to operate and where the acts done sufficiently establish the alleged agreement to provide a safeguard against fraud in lieu of the statutory requirements." *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, 286-87 (1965). "If the performance can reasonably be accounted for in any other manner or if plaintiff has not altered his position in reliance on the agreement, the case remains within the operation of the statute." *Id.* at 287. *Accord WBNS-TV v. Palmer-Donavin Mfg. Co.*, 10th Dist. No. 86AP-789 (Aug. 20, 1987).

{¶ 41} Accordingly, the partial performance exception to the statute of frauds is predicated on finding an oral agreement containing the terms alleged by the party asserting the exception. *See Upland Corp. v. Trustees of F. & A.M. Lodge 421*, 2d Dist. No. 84 CA 62 (July 16, 1985). In the absence of an oral contract, and acts performed in exclusive reliance upon the oral contract, the partial performance exception is inapplicable. Although the evidence in the present case demonstrates Katherine LeVeque granted One Columbus workers permission to access the walkway after normal business hours, there is no evidence demonstrating Katherine LeVeque or any other owner of LeVeque Tower entered into an oral agreement to provide One Columbus with a permanent easement to access the walkway after normal business hours. As such, the acts of purchasing and installing the keycard readers, distributing keycards, and using the keycards to access the walkway were not done in exclusive reliance upon an oral contract to grant One Columbus an easement to access the walkway afterhours. Moreover, appellees fail to explain how they changed their position to their detriment in exclusive reliance on a purported oral contract. As such, the partial performance exception was not applicable in the present case.

{¶ 42} In the final analysis, the Declaration provides the extent and limitations of appellees' rights to access the walkway. The clear and unambiguous language of the Declaration states that the walkway must be maintained open during normal business hours of One Columbus building. Although there is no evidence in the record of a parol agreement to grant One Columbus an easement to access the walkway after normal business hours, any such parol agreement would be unenforceable due to the statute of frauds. Accordingly, the trial court erred in granting appellees' respective motions for summary judgment.

{¶ 43} Based on the foregoing, Tower 10's first assignment of error is sustained.

{¶ 44} Tower 10's second assignment of error asserts the trial court erred in denying Tower 10's motion for summary judgment. "Ordinarily, a denial of a motion for summary judgment is not a final appealable order, but where the matter is submitted upon cross-motions and a final judgment was entered against the appellant, an appellate court properly may review the denial of the cross-motion." *DeAscentis v. Margello*, 10th Dist. No. 04AP-4, 2005-Ohio-1520, ¶ 25, citing *Waterfield Fin. Corp. v. Gilmer*, 10th Dist. No. 04AP-252, 2005-Ohio-1004, ¶ 45, fn.1. *Accord Cincinnati Ins. Co. v. Thompson & Ward Leasing Co.*, 158 Ohio App.3d 369, 2004-Ohio-3972, ¶ 14 (10th Dist.).

{¶ 45} Tower 10 asserted in its motion for summary judgment that the Declaration only obligated Tower 10 to maintain the walkway open during One Columbus' normal business hours, from 6:00 a.m. to 6:00 p.m. Monday through Friday and 8:00 a.m. to 12:00 p.m. on Saturday. In our analysis of Tower 10's first assignment of error, we concluded the Declaration unambiguously states that the walkway must be maintained open during One Columbus' normal business hours.

{¶ 46} At the preliminary injunction hearing, Steve Hearn, the principal operating partner in 10 W Broad, stated that while the "public is allowed to come and go" from One Columbus building "during normal business hours," members of the public "can't just freely walk in and out of the [One Columbus] building" after normal business hours. (Prelim. Inj. Hearing Tr. Vol. I at 157.) Hearn affirmed that the "normal business hours of the [One Columbus] building [were] 6:00 a.m. to 6:00 p.m." on weekdays. (Prelim. Inj. Hearing Tr. Vol. I at 156.) Hale noted that the doors to One Columbus building "open[ed] at 6:00 a.m. and they close[d] at 6:00 p.m." throughout the week. (Prelim. Inj. Hearing Tr. Vol. I at 343.) Hearn and Hale both noted that, although One Columbus building was open

to the general public between 6:00 a.m. and 6:00 p.m. on weekdays, the building was accessible to its tenants 24/7.

{¶ 47} Red Capital's lease agreement for its office in One Columbus building defines normal business hours as "6:00 a.m. to 6:00 p.m." Monday through Friday "and 8:00 a.m. to 12:00 p.m. on Saturdays." (10 W Broad Ex. 76, Section 2(b).) Other One Columbus tenant lease agreements similarly define normal business hours as 6:00 a.m. to 6:00 p.m. Monday through Friday and 8:00 a.m. to 12:00 p.m. on Saturday.

{¶ 48} Appellees contend the phrase "normal business hours" in Section 2.05 of the Declaration should be construed to mean 24/7, as One Columbus workers have 24/7 access to One Columbus building and have historically possessed 24/7 keycard access to the walkway. (10 W Broad Appellee's Brief at 38; Red Capital Appellee's Brief at 42.) The Declaration, however, provides that the walkway is to be maintained open during normal business hours of One Columbus building, not the hours One Columbus building is accessible to its tenants. The evidence demonstrating that One Columbus workers had permission to access the walkway by keycard outside of normal business hours indicates that normal business hours of One Columbus building were the hours the walkway was maintained open and keycard access was unnecessary. Although appellees contend they are entitled to access the walkway 24/7, appellees do not otherwise dispute that One Columbus building's normal business hours are 6:00 a.m. to 6:00 p.m. Monday through Friday and 8:00 a.m. to 12:00 p.m. on Saturday.

{¶ 49} The record evidence demonstrates that One Columbus building's normal business hours are 6:00 a.m. to 6:00 p.m. Monday through Friday and 8:00 a.m. to 12:00 p.m. on Saturday. Based on the foregoing, Tower 10's second assignment of error is sustained.

{¶ 50} 10 W Broad's conditional assignment of error on cross-appeal asserts that, if this court finds 10 W Broad did not possess an express easement to access the walkway after normal business hours, the trial court erred in failing to find an easement by prescription. Red Capital did not file a cross-appeal, but argues that "an alternative basis for affirming" the trial court was that Red Capital had acquired an easement by estoppel to access the walkway at any time. (Red Capital's Appellee's Brief at 44.)

{¶ 51} Although appellees presented their contentions regarding easements by prescription or estoppel in their respective motions for summary judgment, the trial court

granted appellees' motions based solely on its conclusion that appellees had an express easement to access the walkway at any time. As such, the trial court declined to address appellees' alternative arguments for easements by prescription or estoppel.

{¶ 52} "[W]here the trial court decline[s] to consider one of the arguments raised in a motion for summary judgment, but grant[s] the motion for summary judgment solely on the basis of a second argument, the first argument [is] not properly before the court of appeals." *Riverside v. State*, 190 Ohio App.3d 765, 2010-Ohio-5868, ¶ 58 (10th Dist.), citing *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 89 (1992). *Accord Baird v. Owens Community College*, 10th Dist. No. 15AP-73, 2016-Ohio-537, ¶ 26 (observing that since the "Court of Claims did not address the substantial issues of contract formation, scope and breach, but rather, granted summary judgment solely on the alternative ground of damages, it [was] appropriate that [the appellate court] decline to address those issues further in the first instance and, instead, remand this matter for the Court of Claims to initially consider and decide them"); *Armbruster v. CGU Ins.*, 6th Dist. No. S-02-024, 2003-Ohio-3683, ¶ 28 (noting that, although the appellee argued "it was entitled to summary judgment on either or both of the other two issues * * * raised in its motion for summary judgment," because these issues "were deemed moot and not considered by the trial court" the appellate court "decline[d] to consider them for the first time on appeal"); *Stratford Chase Apts. v. Columbus*, 137 Ohio App.3d 29, 33 (10th Dist.2000), quoting *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360 (1992) (noting that "[e]ven though a reviewing court considers a summary judgment motion *de novo*, Civ.R. 56(C) 'mandates that the trial court make the initial determination whether to award summary judgment; the trial court's function cannot be replaced by an "independent" review of an appellate court' "); *Conny Farms, Ltd. v. Ball Resources, Inc.*, 7th Dist. No. 09 CO 36, 2011-Ohio-5472, ¶ 15, citing *Mills-Jennings, Inc. v. Dept. of Liquor Control*, 70 Ohio St.2d 95, 99 (1982); *Cincinnati v. Fourth Natl. Realty, LLC*, 1st Dist. No. C-180156, 2019-Ohio-1868, ¶ 64.

{¶ 53} Accordingly, because the trial court did not address appellees' arguments for easements by either prescription or estoppel, we decline to address these arguments in the first instance on appeal. Instead, we remand the matter to the trial court for it to initially consider and decide appellees' contentions regarding prescription and estoppel. As such, we decline to address 10 W Broad's conditional cross-assignment of error.

{¶ 54} Having sustained Tower 10's first and second assignments of error, and having declined to address 10 W Broad's conditional assignment of error on cross-appeal, we reverse the judgment of the Franklin County Court of Common Pleas and remand the matter to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed and cause remanded.*

SADLER, P.J., and DORRIAN J., concur.

_____